**CLARK–PETERSON COMPANY, INC., Jerald F. Clark and Jack A. Clark, Appellees,**

v.

**INDEPENDENT INSURANCE ASSOCIATES, LTD., and Dick Wissink, Individually, Defendants,**

**and**

**The Cincinnati Insurance Company, Appellant.**

**No. 91–1088.**

Supreme Court of Iowa.

Nov. 25, 1992.

R. Todd Gaffney, Hugh J. Cain, and Dawn R. Siebert of Duncan, Jones, Riley & Finley, P.C., Des Moines, for appellant.

John C. Conger of Wiggins & Anderson, P.C., West Des Moines, for appellees.

HARRIS, Justice.

Plaintiff Clark–Peterson Company, Inc.,[1] became liable in an underlying suit for intentional discrimination. Neil Brown, plaintiff in the underlying case, obtained a substantial judgment on a theory of improper employment termination, that is, discrimination due to alcoholism. *See Consolidated Freightways, Inc. v. Cedar Rapids Civil Rights Comm'n*, 366 N.W.2d 522, 526–28 (Iowa 1985) (holding damages are recoverable for disparate treatment because of disability in the form of alcoholism). *See also* Iowa Code § 601A.6(1)(a)

1. Jerald F. Clark and Jack A. Clark, associated with the corporation, joined as individual plaintiffs. For simplicity we refer to all plaintiffs in the singular, as Clark–Peterson.

2. A separate count sought recovery against local insurance agents. Trial was bifurcated and the claim against the agents is not at issue in this appeal.

3. The relevant provisions of the liability insurance policy at issue are as follows:
PART I—DEFINED WORDS AND PHRASES
 A. "You", "your" and "yours" mean a person or organization shown as the Named Insured in the declarations;
 ....
 G. "Occurrence" means an accident, or a happening or event, or a continuous or repeated exposure to conditions which occurs during the policy period which unexpectedly or unintentionally results in Personal Injury ...;
 H. Personal Injury means:
 (3) Discrimination or humiliation;
 ....
PART II—THE COVERAGE
 A. WE WILL PAY
 We will pay on behalf of the Insured the ultimate net loss for occurrences during the policy period in excess of the underlying insurance or for occurrences covered by this policy which are either excluded or not covered by underlying insurance because of Personal Injury
 ....

(1991). The appropriateness of that recovery was not appealed and is not challenged in the present suit.

Clark–Peterson brought this declaratory judgment action against defendant Cincinnati Insurance Co. (the insurer),[2] which had issued plaintiffs a "contractor's umbrella liability policy."

The district court ruled, and we agree, that the policy[3] did not cover the employment claim because the discrimination was intentional.[4] The court nevertheless ruled that coverage should be afforded under the doctrine of reasonable expectations, a holding with which we also agree.

I. The first issue presented is the insurer's contention that, because the act complained of was intentional, the policy did not cover Brown's discrimination claim. The district court specifically found that the discrimination against Brown was an intended act by the Clarks and thus, under the precise terms of the policy, there was no coverage. The court was prompted to

B. THIS POLICY DOES NOT APPLY—EXCLUSIONS
 This policy does not apply:
 ....
 (h) To any liability for Personal Injury arising out of discrimination including fines or penalties imposed by law, if (1) insurance coverage therefor is prohibited by law or statute, or (2) committed by or at your direction;
 ...
 ....
D. WHO IS AN INSURED—PERSONS OR ORGANIZATIONS WE WILL COVER
 ....
 Each of the following is an Insured under this policy to the extent set forth below:
 ....
 (f) Any executive officer, director, or employee or stockholders of yours while acting within the scope of his duties as such;
 ....

4. The discrimination would also qualify as an occurrence under part I section G of the policy if it was unexpected. The district court made no determination with respect to whether or not the discrimination was unexpected. The omission can however be ignored because the termination was "at [the] direction" of Clark–Peterson, and thus coverage was excluded under part II section B(h)(2) of the policy.

this view by two policy clauses: (1) the intentional acts clause accompanying the definition of "occurrence" found in part I section G; and (2) the exclusion of discrimination "committed by or at your direction" found in part II section B(h)(2). Our reading of the two clauses leads us to the same conclusion. Brown's claim is not covered under the precise wording of the policy.

The district court's view that the discharge was not an "occurrence" is consistent with our subsequent holding in *Smithway Motor Xpress, Inc. v. Liberty Mutual Insurance Co.*, 484 N.W.2d 192, 194–95 (Iowa 1992) (holding a wrongful discharge is not an "occurrence").

 II. A closer question is presented on Clark–Peterson's claim of coverage on the basis of the reasonable expectations doctrine. Originating with *Rodman v. State Farm Mutual Automobile Insurance Co.*, 208 N.W.2d 903, 906 (Iowa 1973), the doctrine has become a vital part of our law interpreting insurance policies. But the doctrine does not contemplate the expansion of insurance coverage on a general equitable basis. The doctrine is carefully circumscribed; it can only be invoked where an exclusion "(1) is bizarre or oppressive, (2) eviscerates terms explicitly agreed to, or (3) eliminates the dominant purpose of the transaction." *Aid (Mut.) Ins. v. Steffen*, 423 N.W.2d 189, 192 (Iowa 1988); *Farm Bureau Mut. Ins. Co. v. Sandbulte*, 302 N.W.2d 104, 112 (Iowa 1981).

 Before the doctrine can be considered, a preliminary criterion must be satisfied. Either the policy must be such that an ordinary layperson would misunderstand its coverage, or there must be circumstances attributable to the insurer which would foster coverage expectations. *Steffen*, 423 N.W.2d at 192; *Sandbulte*, 302 N.W.2d at 112–13. Once the doctrine has been shown to be applicable, "the objectively reasonable expectations of applicants and intended beneficiaries regarding insurance [policies] will be honored even though painstaking study of the policy provisions would have negated those expectations." *Steffen*, 423 N.W.2d at 192 (quot-

ing *Rodman*, 208 N.W.2d at 906). When they are honored, "[r]easonable expectations may be established by proof of the underlying negotiations or inferred from the circumstances." *Steffen*, 423 N.W.2d at 192 (citing *Sandbulte*, 302 N.W.2d at 112).

In applying the doctrine, the district court reasoned this way. The policy purports to provide protection for discrimination in part I section H(3). The intentional acts clause in part I section G excludes from coverage acts of intentional discrimination (disparate treatment). The "at your direction" clause in part II section B(h)(2) excludes disparate impact claims from coverage. The district court determined that, contrary to part I section H(3), the policy under no circumstances provides coverage for liability based on discriminatory acts. Thus the court said, "The policy exclusions act to eviscerate all coverage for discrimination, a term explicitly agreed to in part I section H(3)." This was particularly unfair in view of another finding: that Clark–Peterson, in deciding to purchase the policy, was prompted in part by its provision of discrimination coverage. As a result, according to the district court, "the policy must be viewed to be oppressive to the [insured]." Thus the district court found application of the doctrine appropriate on all three grounds.

 We review applications of the reasonable expectations doctrine with a view to the liability for which insurance coverage was sought. *See Steffen*, 423 N.W.2d at 192; *Sandbulte*,' 302 N.W.2d at 113. The coverage sought in this case was for liability arising from firing an employee, firing which the underlying suit established to constitute intentional discrimination because it was due to the employee's alcoholism. The issue becomes whether an ordinary layperson could reasonably expect coverage under this policy under these circumstances. The district court answered in the affirmative. Its finding that an ordinary layperson could reasonably expect coverage was certainly validated during

the appellate process following that finding.[5]

We also think the answer is clearly yes, that an ordinary layperson could expect coverage. The policy purports to provide some discrimination coverage; the insured here seeks coverage for an unusual and controversial liability, liability which no doubt came as a shock to it.[6]

Coverage does not necessarily follow from the finding that an ordinary layperson could expect coverage. It cannot be awarded unless we agree with the district court on at least one of its three findings that denial of coverage: (1) is bizarre or oppressive; (2) eviscerates terms explicitly agreed to; or (3) eliminates the dominant purpose of the transaction. *Steffen*, 423 N.W.2d at 192. Under the special circumstances here, we agree with respect to the second ground; the exclusion effectively guts the discrimination coverage previously

agreed to. The insurer contends that evisceration is not complete and therefore not achieved because a form of discrimination (disparate impact)[7] can be imagined which, it is said, would be covered under the policy. So doing, the insurer calls upon us to hold for liability in a situation not supported by the facts here; this is not a disparate impact case.

We decline to speculate on the policy's coverage for liability arising from disparate impact because we believe evisceration can occur on something less than total obliteration of all possibilities of coverage. "Eviscerate," according to its dictionary meaning, is to disembowel—or to gut. Webster's New International Dictionary (3d ed. 1964). To qualify under the definition, it is enough if an exclusion deprives coverage in a vital and substantial way. Disemboweling is the taking of a vital organ, not the taking of all of them.[8]

---

**5.** We transferred the case to the court of appeals, and that court affirmed the trial court judgment by operation of law on a three-three vote. We note that the three judges who voted to affirm did so on the basis of Clark–Peterson's first contention, one we previously rejected in division I of this opinion. The three believe that the policy did indeed specifically provide coverage.

**6.** As mentioned, liability in the underlying case was on a theory contemplated in *Consolidated Freightways*, 366 N.W.2d at 526–28, a case we considered on judicial review of agency action. Our majority acknowledged, pursuant to a municipal civil rights ordinance, that an alcoholic person could be a disabled person, entitled to civil rights protection.

We were not blind to the fact that finding disability on such a basis was unique and differed substantially from discrimination based on the more traditional bases of race, color, religion, sex or national origin. *See International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396, 415 n. 15 (1977). The uniqueness of our *Consolidated Freightways* holding has some bearing on Clark–Peterson's understanding of the coverage under the policy here.

This case is a far cry from the more traditional ones mentioned. It does no offense to the public policy protecting disabled persons to acknowledge that an employer in the position of Clark–Peterson, having employed an alcoholic person, faces a dilemma. If the alcoholic person is retained, the very survival of the business might be jeopardized. But if the alcoholic person is for that reason discharged, liability for extensive damages might be sought. *See Con-*

*solidated Freightways*, 366 N.W.2d at 536 (dissenting opinion) ("The obvious risks to an employer from continuing such a person in a job ... cannot be ignored.").

**7.** The distinction between "disparate treatment" and "disparate impact" was explained in *Hy–Vee Food Stores v. Civil Rights Commission*, 453 N.W.2d 512, 516–19 (Iowa 1990). Disparate treatment cases involve discrimination which is addressed to persons on the basis of race, color, religion, etc.; disparate impact cases involve discrimination which, though not addressed on such a basis, results in it. The present case does not turn on this distinction. Here the termination was intended to be, and was directed toward, Brown personally on the basis of his alcoholism.

**8.** The policy's "by or at your direction" clause is worded to exclude coverage for intentional discrimination. Although we are not called upon to decide the question, it seems likely that the sweep of that clause extends beyond intentional discrimination, certainly far beyond the present unique case. If the clause were to deny coverage, not only for disparate treatment cases, but also for disparate impact cases, its effect would extend to deny coverage in all, or substantially all, discrimination cases. Stated otherwise, the clause would eviscerate all, or substantially all, of a purported coverage. This would clearly be contrary to the reasonable expectations doctrine. We revisited the reasonable expectations doctrine in a similar circumstance and applied it in *Wohlenhaus v. Pottawattamie Mutual Insurance*, 407 N.W.2d 572, 576 (Iowa 1987) (holding exclusion does not apply if it eliminates dominant purpose of the transaction).

To deny discrimination coverage in the present case would be to withdraw with the policy's left hand what is given with its right. In a fundamental sense, of course, this is the proper function of any exclusion clause in an insurance policy. The reasonable expectations doctrine does no violence to this proper function by its limited intrusion into it. The doctrine means only that when, within its metes and bounds definition, an exclusion acts in technical ways to withdraw a promised coverage, it must do so forthrightly, with words that are, if not flashing, at least sufficient to assure that a reasonable policy purchaser will not be caught unawares.

The reasonable expectations doctrine is a recognition that insurance policies are sold on the basis of the coverage they promise. When later exclusions work to eat up all, or even substantially all, of a vital coverage, they cannot rest on technical wording, obscure to the average insurance purchaser. At some point fairness demands that the coverage clause itself be self-limiting. Clark–Peterson's claim could not have arisen if the coverage promised in the coverage clause had been clearly worded so as to extend coverage only as far as the insurer contends it does extend. The difficulty arises because a much broader coverage is promised, but an attempt is made to withdraw it in violation of the doctrine of reasonable expectations.

We agree with the district court that the special facts here qualify for application of reasonable expectations on the second ground for the doctrine. The exclusions upon which the insurer relies would eviscerate the discrimination coverage explicitly agreed to.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.

All Justices concur except LARSON and LAVORATO, JJ., who take no part.