**Debra Jayne KRAUSE, Appellee,**

v.

**Paul Raymond KRAUSE, Defendant,**

**IMT Insurance Company, Intervenor–Appellant.**

No. 97–739.

Supreme Court of Iowa.

Feb. 17, 1999.

Rehearing Denied March 12, 1999.

---

Robert D. Houghton and Theresa C. Davis of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for intervenor-appellant.

James A. Schall, Storm Lake, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, SNELL, TERNUS, and CADY, JJ.

McGIVERIN, Chief Justice.

The question here is whether a "step-down" provision in an endorsement to an automobile insurance policy, which reduces uninsured motorist benefits to the minimum liability limits in the Iowa financial responsibility law, is enforceable.

We believe that it is. Therefore, we reverse the district court ruling to the contrary

and remand for entry of judgment accordingly.

## I. Background facts and proceedings.

On November 21, 1995, Debra Jayne Krause and her husband, Paul Raymond Krause, were involved in a one-motor vehicle accident. The accident occurred when Paul, who was driving the couple's pickup, fell asleep and failed to negotiate a curve in the road. Paul lost control and the pickup rolled three times. Debra was severely injured.

The pickup was insured by a policy issued by IMT Insurance Company (IMT). Debra and Paul are listed as named insureds for liability and other coverages. The policy includes language known as a "family member exclusion." It states that there is no liability coverage for any insured for bodily injury sustained by another insured or family member. In other words, a named insured would have no liability coverage for his or her actions which cause injuries to another named insured or family member. Thus, Paul was an uninsured motorist in regard to a claim by Debra against him for personal injuries arising from the accident.

The declarations page of the policy lists uninsured motorist (UM) coverage as $100,000 for each person and $300,000 for each accident. An endorsement to the policy, however, reduces or "steps down" the amount of UM coverage to an amount "that does not exceed the limit specified in the financial responsibility law of Iowa" in the event there is no liability coverage under the policy for injury to a family member or named insured due to the family member exclusion.

According to IMT, the phrase "financial responsibility law of Iowa" refers to Iowa Code chapter 321A (1995), which is entitled Motor Vehicle Financial Responsibility. The minimum liability limits specified in Iowa Code section 321A.1(10) are $20,000 per person and $40,000 per accident. Thus, IMT asserted that because Paul was regarded as an uninsured motorist, the "step-down" provision limits its uninsured motorist coverage here to $20,000 per person for Debra's personal injury claim against Paul.

On June 25, 1996, Debra filed a petition in district court against Paul, asserting a claim for negligence and seeking damages for injuries she received from the accident. The record shows that although Paul was served with an original notice and copy of the petition, he never filed an answer or appearance. As a result, a default judgment was entered in Debra's favor and against Paul in the amount of $1,284,456.

Thereafter, IMT filed a petition of intervention and a request for declaratory relief, see Iowa rules of civil procedure 75 and 261, asking the court to clarify the applicable limits of UM coverage under the policy covering the pickup. In its petition, IMT asserted that because there was no liability coverage available to Paul under the policy due to the family member exclusion, thereby making Paul an uninsured motorist, the amount of UM coverage benefits available to Debra was reduced from $100,000 to $20,000.

IMT and Debra entered into an agreement and partial release whereby IMT paid Debra $20,000 for uninsured motorist benefits. In return, Debra released all claims against IMT arising from the accident, subject to her claim for uninsured motorist benefits above $20,000.

IMT filed a motion for summary judgment, see Iowa rule of civil procedure 237(c), and Debra filed a resistance and cross motion for summary judgment.

A hearing concerning the motions was held. For purposes of the hearing, the parties stipulated that due to the family member exclusion, Paul had no liability coverage under the policy and thus was considered to be an uninsured motorist. The parties therefore stipulated that the only issue to be decided by the court was the proper amount of UM coverage available to Debra to apply on her damages claim against Paul. IMT argued that the limit of its liability under the UM coverage was $20,000, while Debra argued that she was entitled to $100,000 of UM benefits based on her assertion that the step-down provision was unenforceable.

The district court sustained Debra's motion for summary judgment and overruled IMT's motion. The court concluded that the

step-down language in the UM coverage endorsement was ambiguous and unenforceable. The court believed that a layperson would not understand that the reference to "financial responsibility law of Iowa" was a reference to Iowa Code chapter 321A or limits set forth therein, or that the limits of uninsured motorist coverage would be reduced to $20,000 per person/$40,000 per accident when the family member exclusion was triggered. Based on the alleged ambiguous language of the step-down provision, and construing the remaining language of the policy in Debra's favor, the court concluded that the applicable limit of UM coverage available to Debra was $100,000.

IMT appeals the decision of the district court.

## II. Standard of review.

 Our review of a grant or denial of summary judgment is at law. Iowa R.App. P. 4; *Gabrilson v. Flynn*, 554 N.W.2d 267, 270 (Iowa 1996). In this appeal, the facts are undisputed. In such cases, we determine whether the district court correctly applied the law. *Diggan v. Cycle Sat, Inc.*, 576 N.W.2d 99, 102 (Iowa 1998). "Summary judgment is properly granted if the only controversy concerns the legal consequences flowing from undisputed facts." *Id.* Interpretation and construction of provisions of an insurance policy are questions of law for the court. *LeMars Mut. Ins. Co. v. Joffer*, 574 N.W.2d 303, 306–07 (Iowa 1998).

## III. Preliminary matters.

IMT asserts that the district court wrongly concluded that the UM endorsement language reducing the amount of UM coverage benefits to an amount "that does not exceed the limit specified in the financial responsibility law of Iowa" is ambiguous and not enforceable. IMT contends that the district court applied the wrong analysis in reaching its conclusion.

As noted above, the dispute involved the proper amount of uninsured motorist coverage available to Debra under the policy. We point out that Debra does not challenge the validity of the family member exclusion in the policy. Indeed, such a challenge would

fail because we have upheld the validity of family member exclusions in the past. *See United Fire & Cas. Co. v. Victoria*, 576 N.W.2d 118, 121 (Iowa 1998) (upholding family member exclusion in auto insurance policy); *Principal Cas. Ins. Co. v. Blair*, 500 N.W.2d 67, 69 (Iowa 1993) (upholding family member exclusion in homeowner's insurance policy); *Walker v. American Family Mut. Ins. Co.*, 340 N.W.2d 599, 603 (Iowa 1983) (upholding family member exclusion in auto insurance policy). In doing so, we rejected the argument by plaintiff-insureds that the family member exclusion was void as contrary to public policy. *See Blair*, 500 N.W.2d at 68–69; *Walker*, 340 N.W.2d at 602–03.

Debra did not assert in the district court that the endorsement language reducing the limits of available UM coverage to the "limit specified in the financial responsibility law of Iowa" was void as contrary to public policy. Rather, she only contended that the endorsement language was not enforceable either because it is ambiguous or because the doctrine of reasonable expectations applies so as to prevent enforcement of the endorsement language.

## IV. Is the language of the uninsured motorist coverage endorsement ambiguous?

Although we have upheld family member exclusions in insurance policies, we have never before addressed the validity of a family member exclusion in conjunction with language that reduces UM coverage to an amount specified by statute.

Before addressing the merits of the issue presented in this case, we believe it helpful to first review the applicable statutory provisions and relevant portions of the insurance policy.

### A. Applicable statutory provisions.

Iowa Code section 516A.1 requires that motor vehicle liability insurance policies contain uninsured motorist coverage at least in the amount stated in section 321A.1(10) unless expressly rejected by the named in-

sured.[1] Thus, the UM coverage amounts resulting from section 321A.1(10) are $20,000 per person and $40,000 per accident. Debra and Paul Krause, as named insureds, did not reject UM coverage.

## B. Relevant insurance policy provisions.

The declarations page of the policy lists the limits for UM coverage at $100,000 for each person and $300,000 for each accident.

By virtue of endorsements to the policy, however, IMT has attempted to reduce the limits of UM coverage in the event that the policy provides no liability coverage for any insured concerning a claim for bodily injury to another insured or any family member. The separate endorsement to the uninsured motorist coverage portion of the policy states in pertinent part:

If *Uninsured Motorists Coverage is payable because · liability coverage* for "your covered auto" under Part A of the policy *is excluded for damages sustained in the accident:*

1. *That part of the limit of liability* shown for each person for Uninsured Motorists Coverage in the Declarations *that does not exceed the limit specified in the financial responsibility law of Iowa, is our maximum limit of liability for all damages, including damages for* care, loss of services or death, *arising out of "bodily injury" sustained by any ·person* in any one accident.

2. Subject to this limit of each person, that part of the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage that does not exceed the limit specified in the financial responsibility law of Iowa is our maximum limit of liability for all damages arising out of "bodily injury" resulting from any one accident.

(Emphasis added.)

IMT suggests that the above reference to the "financial responsibility law of Iowa" is to Iowa Code section 321A.1(10), which establishes the statutorily required amounts of liability at $20,000 per person and $40,000 per accident. Under the policy language, IMT contends that because the family member exclusion eliminates any liability coverage to Paul, making him an uninsured driver, the amount of UM coverage available to Debra under the policy for her claim against Paul is reduced from the amounts specified on the declarations page to the amounts specified in Iowa Code section 321A.1(10),

---

1. Iowa Code section 516A.1 states in part:
No automobile liability or motor vehicle liability insurance policy insuring against liability for bodily injury or death arising out of the ownership, maintenance, or use of a motor vehicle shall· be delivered or issued for delivery in this state . . . unless coverage is provided in such policy . . . for the protection of persons insured under such policy who are legally entitled to recover damages from the owner or operator of an uninsured motor vehicle . . . because of bodily injury, sickness, or disease, including death resulting therefrom, caused by accident and arising out of the ownership, maintenance, or use of such uninsured . . . motor vehicle, . . . with the person insured or with a motor vehicle which the person insured is occupying at the time of the accident. . . . [T]he *uninsured motor vehicle . . .·* coverage, *. . . shall include limits for bodily injury or death at least equal to those stated in section 321A.1, subsection 10.* The form and provisions of such coverage shall be examined and approved by the commissioner of insurance. However, the named insured may reject all of such coverage, or reject the uninsured motor vehicle . . . coverage, . . . .

(Emphasis added.)
Iowa Code section 321A.1(10) states in pertinent part:
*Proof of financial responsibility. Proof of ability to respond in damages for liability,* on account of accidents occurring subsequent to the effective date of the proof, arising out of the ownership, maintenance, or use of a motor vehicle, *in* amounts as follows: *. . . the amount of twenty thousand dollars because of bodily injury to* or death of *one person* in any one accident, and, subject to the limit for one person, the amount of forty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and the amount of fifteen thousand dollars because of injury to or destruction of property of others in any one accident.
(Emphasis added.) The minimum limits of uninsured motorist coverage required by section 321A.1(10) are equal to the minimum limits of liability coverage required in any automobile insurance policy as stated in Iowa Code section ·321A.21(2)(b).

i.e., from $100,000 to $20,000 per person, and from $300,000 to $40,000 for each accident.

## C. Analysis.

▆▆▆ "Because insurance policies are in the nature of adhesive contracts, we construe their provisions in a light most favorable to the insured." *A.Y. McDonald Indus. v. Insurance Co. of N. Am.*, 475 N.W.2d 607, 619 (Iowa 1991). "In the construction of insurance policies, the cardinal principle is that the intent of the parties must control; and except in cases of ambiguity this is determined by what the policy itself says." *Id.* at 618.

In deciding whether the endorsement language reducing the uninsured motorist coverage was enforceable, the district court considered whether the language was ambiguous. The court noted the rule that "[p]olicy ambiguity exists when, after application of principles of contract interpretation, a genuine uncertainty remains as to which one of two or more meanings is the proper one." *See Kibbee v. State Farm Fire & Cas. Co.*, 525 N.W.2d 866, 868 (Iowa 1994).

Following this analysis, the district court concluded that the UM endorsement language was ambiguous, not because it believed there were multiple possible interpretations of the policy language, but because it believed a layperson would not understand that the phrase "financial responsibility law of Iowa" used in the UM endorsement refers to Iowa Code chapter 321A. The court also believed a layperson would not understand that the liability limits specified in section 321A.1(10) would be the applicable limits of UM coverage in the event that there was no liability coverage due to the family member exclusion.

Upon our consideration of the language of the policy as a whole, including the declarations page and attached endorsements, *see Ferguson v. Allied Mut. Ins. Co.*, 512 N.W.2d 296, 299 (Iowa 1994) (in construing insurance policies, court considers effect of policy as a whole, in light of all declarations, riders, or endorsements), we conclude that the district court incorrectly determined that the language of the UM coverage endorsement is ambiguous.

We believe the endorsement plainly states that when there is no *liability* coverage available to an insured, because the family member exclusion is triggered, then the amount of uninsured motorist coverage available to an insured under the policy is reduced or limited. The amount of UM coverage available to Debra under the policy is reduced to the limit specified in the financial responsibility law of Iowa, or from $100,000 to $20,000 for injuries to one person. This is the only reasonable interpretation of the language; it is not susceptible to multiple meanings or interpretations. *Cf. Georgia Farm Bureau Mut. Ins. Co. v. Burch*, 222 Ga.App. 749, 476 S.E.2d 62, 63 (1996) (family member exclusion that limited liability coverage for bodily injury to "the extent the limits of liability . . . exceed the limits of liability required by [Georgia] law" held not to violate public policy); *Universal Underwriters Ins. Co. v. Hill*, 24 Kan.App.2d 943, 955 P.2d 1333, 1336–37 (1998) (holding that although step-down provision and language in addendum to auto insurance policy that limited liability for permissive users to "limits required by Kansas law" might be "stylistically inelegant," language was not ambiguous because a reasonable person would not be misled as to the policy limits for permissive users); *Pribble v. State Farm Mut. Auto. Ins. Co.*, 933 P.2d 1108, 1113 (Wyo.1997) (household exclusion that limited liability coverage for bodily injury to the "limits of liability required by [Wyoming] law," and did not identify specific limits of coverage was not ambiguous; exclusion language was not ambiguous simply because insured had to refer to statutory law to understand the language of the exclusion).

The fact that the parties disagree as to the proper amount of uninsured motorist benefits does not mean that the policy language itself is ambiguous. *See Morgan v. American Family Mut. Ins.*, 534 N.W.2d 92, 99 (Iowa 1995) (court will not give a strained or unnatural reading to the words of the policy to create ambiguity where there is none); *Cairns v. Grinnell Mut. Reinsurance Co.*, 398 N.W.2d 821, 824 (Iowa 1987) (ambiguity does not exist merely because provision could have been worded more clearly or precisely than it was).

We recognize that the UM endorsement does not identify a code section *where* the applicable limits of coverage may be found or the specific *amounts* of coverage, but instead simply refers to the "limit specified in the financial responsibility law of Iowa." While the absence of a specific code section or monetary amount may make the language of the endorsement vague, this fact does not mean that the endorsement language is susceptible to multiple interpretations, which is the standard that Debra must meet in order to have the policy language declared ambiguous and thus unenforceable. If anything, the absence of a specific code section or monetary amount relates more to the issue of reasonable expectations of the insured which will be discussed below.

We also point out that the endorsement language does not seek to reduce the availability of uninsured motorist coverage to plaintiff below the amounts required by sections 516A.1 and 321A.1(10). *Cf. Joffer*, 574 N.W.2d at 311 (owned-but-not-insured exclusion upheld where potential for duplication of benefits was clear and enforcing the exclusion did not leave the insureds without coverage equal to the statutorily required minimum amount); *see also Gray v. Midland Risk Ins. Co.*, 925 P.2d 560, 562–63 (Okla. 1996) (owned-but-not-insured exclusion in policy reducing liability for bodily injury to Oklahoma statutory limits was enforceable); *American Nat'l Fire v. Farmers Ins.*, 927 P.2d 186, 191–92 (Utah 1996) (step-down provision limiting liability coverage for guest drivers to the amount required by the Idaho Financial Responsibility Law, which did not specify actual amount, was enforceable); 7 Am.Jur.2d *Automobile Insurance* § 251, at 849, 851 (1997) (discussing cases upholding family member exclusions in automobile insurance policies to extent they did not eliminate the minimum statutory coverage required). *But cf. Cullum v. Farmers Ins. Exch.*, 857 P.2d 922, 927 (Utah 1993) (policy provision reducing liability coverage to "limits of the Financial Responsibility Law," but not specifying monetary amount, was not enforceable because it violated Utah statute which prohibits incorporation of provisions not appearing in the insurance contract or in documents attached to the policy).

We conclude that the district court erred in refusing to enforce the UM policy endorsement language based on its finding that the uninsured motorist endorsement was ambiguous.

## V. Does the doctrine of reasonable expectations apply?

In her brief in support of her motion for summary judgment in the district court, Debra asserted that the doctrine of reasonable expectations applied to prevent the uninsured motorist coverage endorsement language from being enforced. Debra reasserts that theory here to uphold the district court's judgment in her favor. Although the district court did not specifically mention the doctrine of reasonable expectations in its ruling, the court did say "it is doubtful whether a lay person would understand the reference to 'financial responsibility law of Iowa'" as that phrase is used in the UM coverage endorsement.

With respect to the doctrine of reasonable expectations, we have said:

> "the objectively reasonable expectations of applicants and intended beneficiaries regarding insurance policies will be honored even though painstaking study of the policy provisions would have negated those expectations." *Clark–Peterson Co. v. Independent Ins. Assocs., Ltd.*, 492 N.W.2d 675, 677 (Iowa 1992). The doctrine is carefully circumscribed and does not contemplate the expansion of coverage on a general equitable basis. *Id.* It can only be invoked when an exclusion "(1) is bizarre or oppressive, (2) eviscerates terms explicitly agreed to, or (3) eliminates the dominant purpose of the transaction." *Id.* (citation omitted). A preliminary criterion must be satisfied before we apply the doctrine. The policy must either be such that an ordinary layperson would misunderstand its coverage, or there must be circumstances attributable to the insurer which would foster coverage expectations. *Id.*

*Johnson v. Farm Bureau Mut. Ins. Co.*, 533 N.W.2d 203, 206 (Iowa 1995).

Debra has presented no evidence of overt actions or representations by IMT which would foster expectations concerning UM coverage. Instead, Debra seems to contend that the reference to the "financial responsibility law of Iowa" is too vague for an ordinary layperson to find in the Iowa Code and thus an ordinary layperson would not understand that the uninsured motorist limits are reduced to the amounts specified in Iowa Code sections 321A.1(10) and 321A.21(2)(b) when there is no liability coverage for an insured. In support of this contention, Debra's husband and an insured, Paul Krause, filed an affidavit stating that he read the policy upon receipt, but that nothing therein led him to believe that he was limited to a maximum of $20,000 UM coverage when a family member was injured while riding in a vehicle insured under the policy.

While a layperson may have some difficulty matching the phrase "financial responsibility law of Iowa" with the statutorily-required amounts of liability coverage listed in sections 321A.1(10) and 321A.21(2)(b) by consulting the index to the Iowa Code, we are not convinced that the UM endorsement language "is bizarre or oppressive," "eviscerates terms explicitly agreed to," or "eliminates the dominant purpose of the transaction." The endorsement language simply puts into words the UM coverage available to Debra under the policy in view of the family member exclusion, that is, the minimum limits of coverage of $20,000 per person and $40,000 per accident. It thus cannot validly be said that the UM endorsement "eviscerates terms explicitly agreed to" by the parties or "eliminates the dominant purpose of the transaction."

Additionally, Debra does not suggest that there is some minimum uninsured motorist coverage required by law other than the amounts listed in section 321A.1(10). Furthermore, an insurer would have good reason for not identifying the statutory citation or the amount of statutorily required coverage. Both the statutory citation and required amount may change on occasion due to legislative action. Thus, assuming that IMT writes policies in a number of states, it is understandable that IMT would refer to the required amount of coverage as it did. We stated long ago that we would not "extend application of the principle of reasonable expectations to cases where an ordinary [layperson] would not misunderstand [ ] coverage from a reading of the policy unless there are other circumstances attributable to the insurer which cause such expectations." *Rodman v. State Farm Mut. Auto. Ins. Co.*, 208 N.W.2d 903, 908 (Iowa 1973). There, we rejected an insured's argument that a family member exclusion violated his reasonable expectations of coverage based on the insured's claim that, had he read the policy, he would not have understood it. *Id.* at 906–907.

The same result reached in *Rodman* applies here. Because the language of the UM endorsement is not ambiguous, Debra and Paul would have no valid reasonable expectation of $100,000 UM coverage when the family member exclusion is triggered. We thus conclude as a matter of law that Debra has failed to show that the reasonable expectations doctrine is applicable. As a result, the doctrine cannot be used to invalidate the uninsured motorist coverage endorsement which reduces the amount of uninsured motorist coverage from $100,000 to $20,000.

Accordingly, the district court should have enforced the policy as written and should have ruled that Debra was only entitled to $20,000 UM coverage. *See Essex Ins. Co. v. Fieldhouse, Inc.*, 506 N.W.2d 772, 776 (Iowa 1993) (unambiguous exclusions must be given effect).

## VI. Disposition.

We conclude that the district court erred in determining that the language of the uninsured motorist coverage endorsement is susceptible to multiple interpretations. The language of the endorsement is unambiguous. The language of the uninsured motorist coverage endorsement reducing plaintiff's uninsured motorist coverage from $100,000 to $20,000 is enforceable. We reverse the judgment of the district court and remand for entry of judgment in favor of IMT consistent with this opinion.

**REVERSED AND REMANDED.**