# IN THE SUPREME COURT OF IOWA

No. 20–0545

Submitted February 17, 2021—Filed June 11, 2021

**ROBERT F. COLWELL JR.,**

Appellee,

vs.

**MCNA INSURANCE COMPANY and MANAGED CARE OF NORTH AMERICA, INC.** d/b/a **MCNA DENTAL** and **MCNA DENTAL PLANS,**

Appellants.

---

Appeal from the Iowa District Court for Pottawattamie County, James Heckerman, Judge.

The defendants appeal the district court's ruling in favor of the plaintiff finding breach of contract and breach of implied covenant of good faith and fair dealing. **AFFIRMED.**

McDermott, J., delivered the opinion of the court, in which all justices joined.

Rodney C. Dahlquist Jr. (argued), Sean M. Conway, and Anne M. Breitkreutz of Dornan, Troia, Howard, Breitkreutz & Conway PC, LLO, Omaha, Nebraska, for appellants.

Rebecca A. Brommel (argued) of Dorsey & Whitney, LLP, Des Moines, for appellee.

**McDERMOTT, Justice.**

The State of Iowa contracts with two outside entities to manage the dental services provided to adult participants in Iowa's Medicaid program. These entities, referred to as "managed care organizations," develop and maintain a network of dentists throughout the state to provide treatment. One such managed care organization, Managed Care of North America, Inc. d/b/a MCNA Dental Plans, entered into a contract with Robert Colwell, a dentist in Council Bluffs, to deliver dental services to Medicaid participants as a member of MCNA's network.

Three years later, MCNA sent Colwell a letter giving "notice of non-renewal" of the provider contract. Colwell sued, seeking a temporary injunction to prevent MCNA from terminating the provider contract until a final ruling on the merits and asserting claims for breach of contract, breach of the covenant of good faith and fair dealing, and intentional interference with his business relationships with current and prospective patients. The district court granted the temporary injunction request.

After a bench trial, the district court ruled that the provider contract didn't allow MCNA to terminate Colwell through non-renewal of the provider contract. It further held that MCNA couldn't terminate Colwell because doing so would have placed MCNA in breach of state and federal laws that required MCNA to include all dentists who participated in Iowa's Medicaid provider network and to maintain certain coverage thresholds for geographic areas.

In this appeal, MCNA argues that the district court misconstrued the contract by holding that the provider contract forbids non-renewal. MCNA further argues that the district court misapplied the state and federal laws, which it found compelled MCNA to continue to contract with Colwell because of Colwell's participation as a provider in the Medicaid

program. And MCNA argues that the district court erred in holding that MCNA's list of approved dental providers in Colwell's geographic area was insufficient to satisfy MCNA's coverage obligations without Colwell.

This appeal requires us to decide whether MCNA properly ended the provider contract, which renewed automatically for successive one-year terms, by sending the notice of non-renewal. While the state and federal laws that regulate the relationship between a managed care organization such as MCNA and a network provider like Colwell might present interesting areas of exploration, they're secondary to Colwell's breach of contract claim. If MCNA wasn't permitted under the provider contract to terminate Colwell by non-renewal, then MCNA breached the contract, and we need not explore other grounds that might sustain the district court's ruling. On this record, contract interpretation presents a question of law for the court, and we review the district court's ruling to correct legal error. Iowa R. App. P. 6.907; *see Krause v. Krause*, 589 N.W.2d 721, 724 (Iowa 1999); *see also Peak v. Adams*, 799 N.W.2d 535, 543 (Iowa 2011) ("Interpretation is reviewed as a legal issue unless it depended at the trial level on extrinsic evidence." (quoting *Fashion Fabrics of Iowa, Inc. v. Retail Invs. Corp.*, 266 N.W.2d 22, 25 (Iowa 1978))).

The dispute upon which this case turns centers on the interpretation of two sections of article X of the provider contract between MCNA and Colwell. Article X is titled "TERM AND TERMINATION." It states:

> 1. **Term.** This Agreement shall have an initial term of one (1) year commencing on the Effective Date. Thereafter, this Agreement shall automatically renew for terms of one (1) year each. Notwithstanding the foregoing, this Agreement may terminate in accordance with the Termination sections below.

2. **Termination of Agreement.** This Agreement may be terminated under any of the following circumstances:

   A. By either party upon ninety (90) days prior written notice;

   B. By either party upon thirty (30) days prior written notice if the other party is in material breach of this Agreement, except that such termination shall not take place if the breach is cured within the thirty (30) days following the written notice;

   C. Immediately upon written notice by MCNA if there is imminent harm to patient health, or fraud or malfeasance is suspected;

   D. Immediately upon written notice by either party if the other party becomes insolvent or has bankruptcy proceedings initiated against it;

   E. Immediately upon written notice by Provider if MCNA loses, relinquishes, or has materially affected its certificate of authority to operate as an administrative services organization; or

   F. Immediately upon written notice by MCNA if Provider fails to adhere to MCNA's credentialing criteria, including, but not limited to, if Provider (1) loses, relinquishes, or has materially affected its license to provide Covered Services in the State, (2) fails to comply with the requirements set forth in this Agreement; or (3) is convicted of a criminal offense related to involvement in any Medicare, Medicaid or other government sponsored program or has been terminated, suspended, barred, voluntarily withdrawn as part of a settlement agreement, or otherwise excluded from any Medicare, Medicaid or other government sponsored program.

The district court held that section 1 affords no opportunity to end the contract with a notice of non-renewal and that MCNA otherwise failed to establish any basis for termination under section 2. MCNA offers several arguments for why the district court's interpretation is wrong.

MCNA argues that the text of section 1 necessarily includes a right of non-renewal because any other interpretation would make the first two sentences ineffectual. Again, those sentences state: "This Agreement shall

have an initial term of one (1) year commencing on the Effective Date. Thereafter, this Agreement shall automatically renew for terms of one (1) year each." If the contract really provides for a term that extends in perpetuity, MCNA argues, then the repeated references to terms of one year (both initial and renewal) would carry no meaning. The district court held that the contract continues in perpetuity unless the parties exercise one of the termination rights in section 2 of article X. If that's so, MCNA counters, then there would have been no reason to include a one-year term at all. Because the parties did in fact include a one-year term, its argument continues, reference to it necessarily includes a right of non-renewal before the next term begins separate from any of the termination rights in section 2.

In support of its textual interpretation, MCNA cites to an unpublished court of appeals opinion that it says stands for the proposition that a notice of non-renewal may end an agreement at the conclusion of its stated term. *See Beal v. I.G.F. Ins.*, Nos. 02–0361, 02–0007, 2003 WL 556238 (Iowa Ct. App. Feb. 28, 2003). But whether a non-renewal notice lawfully ended the contract wasn't pertinent to the court's resolution of *Beal.* And in any event, the contract in *Beal* differed in a critical respect from the one in this case, noted in italics here:

> This Agreement shall commence as of May 1, 1997 and shall continue in effect until April 30, 2000, provided, however, that the term of this Agreement shall automatically be extended without further action of either party for additional one year periods *unless, not later than six months prior to the end of the then effective term, either the Company or the Employee shall have given written notice that such party does not intend to extend this Agreement.*

*Id.* (emphasis added and original emphasis omitted). Nothing like the italicized portion of the contract from *Beal* that describes a non-renewal

right (let alone a process for exercising it) appears in MCNA's provider contract with Colwell.

Colwell points us to a different case that our court decided, *Martin v. Waterloo Community School District*, 518 N.W.2d 381 (Iowa 1994), for the proposition that when a contract includes an automatic-renewal provision, it continues until terminated without any right of non-renewal. The case turned on the interpretation of two versions of the same statute: a 1991 version and an amended 1993 version. *Id.* at 382–83. The 1991 version stated:

> [A]n administrator's contract shall remain in force and effect for the period stated in the contract. The contract shall be automatically continued in force and effect *for one year beyond the end of its term*, except as modified or terminated by mutual agreement of the board of directors and the administrator, or until terminated as hereinafter provided.

*Id.* at 382 (emphasis added and original emphases omitted) (quoting Iowa Code § 279.24 (1991)). We determined that this version gave the school district a right of non-renewal after the "one year beyond" had ended. *Id.* at 383.

But we analyzed the 1991 version in light of amendments reflected in the 1993 version of the same statute. The amended 1993 version stated:

> The contract shall be automatically continued in force and effect *for additional one-year periods beyond the end of its original term,* except and until the contract is modified or terminated by mutual agreement of the board of directors and the administrator, or until terminated as provided by this section.

*Id.* (quoting 1993 Iowa Acts ch. 32, § 3 (codified at Iowa Code § 279.24 (1993 Supp.))). Substituting the italicized words in the amendment "for additional one-year periods beyond the end of its original term" in place of "for one year beyond the end of its term" materially changed the statute's meaning such that, under the amended version, the contract

automatically renewed for one-year periods until the parties mutually terminated the contract or exercised the termination procedures. *Id.* at 383. We determined that the school district had a right of non-renewal after the first (and only) one-year renewal term under the 1991 version, but had no right of non-renewal under the 1993 version because of its unlimited automatic renewals. *Id.* While not directly on point, our analysis in *Martin* illuminates certain facets of the case before us.

The first sentence of article X, section 1 provides an initial term of one year. The second sentence provides that the term automatically renews every year thereafter without limitation. The third sentence then states: "Notwithstanding the foregoing, this Agreement may terminate in accordance with the Termination sections below." We read these sentences as providing a contract with continuous one-year terms, but in spite of this, the parties agreed on the manner in which they might end the contract, which they set forth in the ensuing paragraphs under the "Termination" heading. The parties agreed on their options to end the contract in the termination provisions of section 2; they included no option of "non-renewal."

We attempt to interpret every word and every provision of a contract to give it effect, if possible. *See Fed. Land Bank of Omaha v. Bollin*, 408 N.W.2d 56, 60 (Iowa 1987) (en banc). MCNA argues that the references to one-year terms in the first two sentences have no effect and become surplus language if we don't infer a right of non-renewal. But the third sentence with its opening clause—"Notwithstanding the foregoing"—seems to address this point. Contrary to MCNA's claim that the one-year terms are ignored, the clause suggests that *in spite of them* something else (here, termination rights) influences their operation. Reading the word "notwithstanding" literally, "the foregoing" (the automatically renewed one-

year term) does not "withstand" the termination rights the parties may exercise. A fair reading of the full section in this manner renders no part surplusage because it recognizes both the contract's automatic renewal and the parties' agreed methods for ending their contractual relationship. Among these methods, the parties included a right to terminate the contract by either party upon ninety days' written notice—a seemingly broad right not limited to any period connected to the contract's renewal date.

MCNA points to other parts of the provider contract that it contends support its interpretation. The heading of article X, "TERM AND TERMINATION," MCNA urges, supports the notion that sections 1 and 2 must relate to different subjects with distinct rights. MCNA highlights the "AND" as doing important work and asks us to read the heading as contemplating two different concepts: the specific duration of the contract and, separately, enumerated events that permit termination at any point during the contract term. But MCNA ignores that the provider contract itself describes how its headings are to be used to interpret the contract's actual terms. Article XI, section 4 states that section headings "are inserted merely for the purpose of convenience and do not, expressly or by implication, limit, define, or extend the specific terms of the section so designated." We hold the parties to their own contract and won't employ headings as interpretive material where the parties expressly agreed they couldn't be used for that purpose.

MCNA further argues that the absence of a contract term prohibiting non-renewal must be read to support a right to end the contract via non-renewal. In other words, had the parties intended to bar one another from exercising non-renewal of the contract, then the provider contract (or its incorporated documents) would have stated as much. We will imply a

contract term where it arises from the language used in the contract. *See Alta Vista Properties, LLC v. Mauer Vision Ctr., PC*, 855 N.W.2d 722, 727 (Iowa 2014). But in this case, we can imply no right of non-renewal in light of the express manner in which the parties specified their termination rights. The third sentence quoted above does not state that the provider contract "may *also* terminate in accordance with the Termination sections below"—it sets forth the means of ending in straightforward fashion: via "the Termination sections below." It's one thing to read silence as perhaps neutral on this subject; it's something else to read it as supporting an affirmative non-renewal right.

And on this subject too, we note that our cases generally show contracts with a non-renewal right to prescribe a deadline by which notice must be provided to effectuate the non-renewal. *See, e.g., Gansen v. Gansen*, 874 N.W.2d 617, 618 (Iowa 2016) (requiring notice of non-renewal 180 days before the contract term ended); *Petty v. Faith Bible Christian Outreach Ctr., Inc.*, 584 N.W.2d 303, 306 (Iowa 1998) (60 days' notice); *Batcheller v. Iowa State Highway Comm'n*, 251 Iowa 364, 367, 101 N.W.2d 30, 32 (1960) (60 days' notice); *Culavin v. Nw. Bell Tel. Co.*, 224 Iowa 813, 814, 276 N.W. 621, 622 (1937) (30 days' notice). For practical reasons, a non-renewal deadline gives the party receiving notice of non-renewal time to adjust their plans accordingly. If we assume, as MCNA urges, that the provider contract contains a non-renewal right separate from the termination procedures, this contract would present an anomaly for including no notice of non-renewal deadline. Could the provider effectuate non-renewal by providing MCNA notice at 11:59 p.m. the night before the automatic-renewal date? We struggle to think that MCNA intended its standard contracts to allow providers to cancel so suddenly, especially

considering MCNA's separate obligation under its contract with the State to maintain certain geographic-coverage thresholds.

MCNA points to a different section in the provider contract that it contends clarifies the right of non-renewal. Article III, section 12 (titled "**Disparagement Prohibition**") sets forth Colwell's agreement not to disparage MCNA and states in part: "Provider agrees not to disparage Payor or MCNA in any manner during the term of this Agreement or in connection with any expiration, termination or non-renewal of this Agreement." MCNA points out the separate references to "termination" and "non-renewal" and argues that the provider contract would not have referred to "non-renewal" in article III if such a right didn't exist in article X.

This sentence may initially appear to be incongruent with article X, section 1, but not solely for reasons that aid MCNA's interpretation. Along with "termination" and "non-renewal," it refers to "expiration" of the provider contract. Yet with its automatic-renewal provision, the contract provides for no means of "expiration." This suggests that the word that immediately precedes the listing of "expiration, non-renewal or termination"—*any*—may reasonably be read here as a modifier to mean "as applicable." Section 12's purpose is to ensure that the provider doesn't disparage MCNA regardless of how the contract ended. But it doesn't mean, without more, that the contract actually provides a right to end the contract using each listed method.

MCNA further argues that its separate contract with the State requires a right of non-renewal on public-policy grounds. Pointing to its duty to control costs and maintain quality services, MCNA argues that without a non-renewal right, it could be handcuffed to continuing with duplicative providers, which might drive up administrative costs. As an

initial matter, the record doesn't show how having extra providers in a network, without more, results in additional administrative costs. Dentists are reimbursed based on services provided, not based on their status as members in a network. There's seemingly little risk of cost duplication for providing to the same patient the same procedure that another dentist already performed. And as discussed above, without a deadline to provide notice of non-renewal, permitting termination only through the termination provisions potentially *protects* MCNA from costs that may be incurred in scampering to find a new provider to plug a hole in its network when a current provider decides not to renew at the last minute. We are not persuaded that a sufficient public-policy rationale exists to rewrite the parties' contract and grant MCNA a non-renewal right.

The district court, having examined the provider contract and determined MCNA possessed no right to terminate by non-renewal, next examined whether MCNA's actions nonetheless met the termination requirements in article X, section 2. But MCNA has made clear—both in its briefing and at oral argument in this case—that it did *not* terminate under any provision in section 2 and thus makes no claim to have exercised a right of termination separate from its claimed right of non-renewal.

Because we now affirm the district court's ruling on Colwell's breach of contract claim against MCNA on the grounds stated above, and because that holding is determinative of this appeal, we need not address the other grounds of breach that the district court found in its ruling.

**AFFIRMED.**