# IN THE SUPREME COURT OF IOWA

No. 21–0623

Submitted February 22, 2022—Filed April 22, 2022

**JESSE'S EMBERS, LLC** d/b/a **JESSE'S EMBERS,**

    Appellant,

vs.

**WESTERN AGRICULTURAL INSURANCE COMPANY** d/b/a **FARM BUREAU FINANCIAL SERVICES,**

    Appellee.

---

Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.

A business that temporarily suspended operations of its bar and restaurant in accordance with a COVID-19 disaster proclamation in March 2020 and was denied coverage under its business interruption insurance policy appeals a district court order granting summary judgment for its insurer. **AFFIRMED.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

James W. Carney and Nicholas J. Mauro of Carney & Appleby, P.L.C., Des Moines, for appellant.

Karl T. Olson of Parker & Geadelmann, P.L.L.C., West Des Moines, for appellee.

**OXLEY, Justice.**

Jesse's Embers operates a bar and restaurant in Des Moines. It made a claim under its commercial property insurance policy for business interruption coverage for the time period it was forced to close its business after Governor Kim Reynolds ordered bars and restaurants to shut down in response to the COVID-19 pandemic. The claim was denied, Jesse's Embers brought this lawsuit, and now it appeals from the district court's entry of summary judgment in favor of its insurer.

We addressed similar policy provisions in a companion case, *Wakonda Club v. Selective Insurance Co. of America*, ___ N.W.2d ___ (Iowa 2022), also filed today. For the reasons provided below, we conclude the language "direct physical loss of or damage to Covered Property" requires a physical aspect to the property loss before coverage is triggered. Because Jesse's Embers relies solely on the loss of use of its property, without more, it failed to establish a loss within the coverage provided by the policy. For similar reasons, we hold Jesse's Embers' claim fails under the Civil Authority coverage provision, which requires actual damage to nearby property before it provides coverage. We affirm the district court's order granting summary judgment.

I.

In March 2020, Governor Reynolds issued a proclamation closing all bars and restaurants from dine-in or in-person service in response to the COVID-19 pandemic. In compliance with the proclamation, Jesse's Embers temporarily suspended its operations. It attempted to sell carry-out orders and reopened on

May 12, 2020, for five days a week, as allowed by a modification of the proclamation.

Jesse's Embers later submitted a claim under its Business Owners Policy with Western Agricultural Insurance Company d/b/a Farm Bureau Financial Services (Farm Bureau) for losses it suffered as a result of suspending its operations. Jesse's Embers claimed the Business Income, Extra Expense, and Civil Authority provisions under the Additional Coverages portion of the policy provide coverage for its claim.

The policy's Additional Coverage related to "Business Income" provides:

**f. Business Income**

**(1) Business Income**

**(a)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

. . . .

**(b)** We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage.

The policy defines "period of restoration" to:

**a.** Mean[] the period of time that:

**(1)** Begins:

**(a)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

**(b)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

**(2)** Ends on the earlier of:

**(a)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(b)** The date when business is resumed at a new permanent location.

Similarly, the Extra Expense provision states:

**g. Extra Expense**

**(1)** We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

Last, the Civil Authority provision explains:

**i. Civil Authority**

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

As relevant to each of these provisions, the policy defines Covered Cause of Loss as "Direct physical loss unless the loss is excluded or limited under Section I - Property."

The policy also includes exclusions, providing, as relevant here:

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. . . .

. . . .

**j. Virus Or Bacteria**

**(1)** Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

Farm Bureau denied Jesse's Embers' claim, responding that there "is a policy exclusion of loss due to a virus[,] that the business income loss must be caused by direct physical loss or damage to the premises, and the Civil Authority provision of the policy was not applicable." Jesse's Embers sued Farm Bureau, asserting claims for breach of contract and bad-faith denial of insurance coverage. In its petition, Jesse's Embers denied having knowledge "of the insured facility being infected with the coronavirus or any other virus, nor is it aware of any employee or customer having contracted the coronavirus or any other virus at any time prior to the Governor's Proclamation and Order, or subsequent to the Governor's Proclamation and Order."

Farm Bureau moved for summary judgment. The district court granted Farm Bureau's motion, holding the Business Income, Extra Expense, and Civil Authority provisions were not triggered, and any alleged loss would be excluded

by the Virus or Bacteria exclusion in any event. Jesse's Embers appealed, and we retained the appeal.

## II.

On appeal, Jesse's Embers argues that the district court erred in concluding the policy's Business Income, Extra Expense, and Civil Authority provisions did not provide coverage and the virus exclusion does not bar coverage. We reject Jesse's Embers' arguments for the reasons stated below and affirm the district court's decision.

## A.

We addressed whether "direct physical loss of or damage to" property language in an identical insurance policy's Business Income and Extra Expense provisions cover mere loss of use of property in a companion case, *Wakonda Club*, also filed today. ___ N.W.2d at ___. As we explained there, "direct physical loss of" property as used in the Business Income and Extra Expense provisions requires a "physical aspect to the loss." *Id.* at ___. While a physical contamination of the policyholder's property may satisfy the direct physical requirement, *see id.* at ___, Jesse's Embers took the same position as Wakonda, affirmatively asserting there was no contamination to its property, either by the existence of the COVID-19 virus on its property or by the presence of any infected employees or patrons. Given this affirmative assertion, the district court here properly granted summary judgment to Farm Bureau with respect to the Business Income and Extra Expense provisions of the policy.

B.

We next address whether the Civil Authority provision of the Farm Bureau policy covers Jesse's Embers' losses. Jesse's Embers has the initial burden of establishing its loss is covered by the policy. *See Am. Guar. & Liab. Ins. v. Chandler Mfg. Co.*, 467 N.W.2d 226, 228 (Iowa 1991).

The Civil Authority provision triggers coverage "[w]hen a Covered Cause of Loss causes damage to [non-covered] property" within a mile of the insured's property, resulting in a civil authority prohibiting access to the insured's property. Further, the civil authority's action prohibiting access must be "in response to dangerous physical conditions" resulting from property damage at a premises located within one mile of the insured's property.

Unlike the Business Interruption and Extra Expenses coverage that provide coverage for "loss of *or* damage to property," the Civil Authority coverage triggers only when there is "damage to property." And not only damage but damage causing dangerous physical conditions sufficient to cause a civil authority to respond by prohibiting access to surrounding properties. In response to Farm Bureau's motion for summary judgment with respect to the Civil Authority coverage, Jesse's Embers stated only that the Governor's "Order prohibited access to Plaintiff's Covered Property, and the area immediately surrounding the Covered Property." A plain and ordinary reading of the policy language concerning Civil Authority coverage would not extend to Jesse's Embers' losses during the mandated closure merely because its neighbors' properties were also ordered closed due to the COVID-19 pandemic. We cannot

rewrite Jesse's Embers' policy to make it do so. *See Amish Connection, Inc. v. State Farm Fire & Cas. Co.*, 861 N.W.2d 230, 236 (Iowa 2015) ("If an insurance policy and its exclusions are clear, the court 'will not "write a new contract of insurance" ' for the parties." (quoting *Boelman v. Grinnell Mut. Reins.*, 826 N.W.2d 494, 502 (Iowa 2013))).

Our conclusion is reinforced by the numerous courts that have rejected civil authority claims where damage to adjacent properties was absent. *See, e.g.*, *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins.*, 29 F.4th 252, 260–61 (5th Cir. 2022) (holding that the civil authority provision did not "provide coverage because the civil authority orders were issued to mitigate the spread of COVID-19, not 'as a direct result of' a covered cause of loss to nearby property"); *10012 Holdings, Inc. v. Sentinel Ins.*, 21 F.4th 216, 223 (2d Cir. 2021) (holding that closure of an art gallery was not covered by civil authority provision of insurance policy, which required risk of direct physical loss of property in the vicinity of insured property); *Newchops Rest. Comcast LLC v. Admiral Indem. Co. LH Dining*, 507 F. Supp. 3d 616, 624 (E.D. Pa. 2020) (holding that loss or damage had to be physical or structural, not merely economic, to be covered under civil authority provision or business income provision); *Mudpie, Inc. v. Travelers Cas. Ins. of Am.*, 487 F. Supp. 3d 834, 844 (N.D. Cal. 2020) (finding that Mudpie was not entitled to Civil Authority coverage because Governor Newsom's stay-at-home orders in response to COVID-19 were preventative and there were no allegations of damage to adjacent property), *aff'd on other grounds* 15 F.4th 885, 889 n.2 (9th Cir. 2021); *United Airlines, Inc. v. Ins. of the State of Pa.*, 385 F. Supp. 2d

343, 349 (S.D.N.Y. 2005) (holding that physical damage, not just economic damage, is required to invoke civil authority coverage).

The Civil Authority provision does not apply in this case. Jesse's Embers did not allege damage to its neighbors' property. Nor was Governor Reynolds's proclamation issued in response to dangerous physical conditions resulting from property damage at a premises located within one mile of Jesse's Embers' property. Rather, the proclamation was issued to lower the risk of transmission of COVID-19 by limiting the number of people gathered in one place. For the foregoing reasons, we hold that the Civil Authority provision does not apply to Jesse's Embers' claim.

Because we hold that the policy did not provide coverage for Jesse's Embers' claim to begin with, we do not address whether the policy would also have excluded coverage under the policy's Virus exclusion.

C.

Lastly, we address the district court's summary judgment ruling on Jesse's Embers' claim under the reasonable expectations doctrine. While the doctrine recognizes "that insurance policies are sold on the basis of the coverage they promise," *Boelman*, 826 N.W.2d at 505 (quoting *Clark–Peterson Co. v. Indep. Ins. Assocs.*, 492 N.W.2d 675, 679 (Iowa 1992) (en banc)), it "is carefully circumscribed" and does not allow a court to expand insurance coverage based on general equitable principles, *Clark–Peterson Co.*, 492 N.W.2d at 677. Jesse's Embers must make a threshold showing by "prov[ing] circumstances attributable to the insurer that fostered coverage expectations or show that the

policy is such that an ordinary layperson would misunderstand its coverage." *Boelman*, 826 N.W.2d at 506 (quoting *Nationwide Agri–Bus. Ins. v. Goodwin*, 782 N.W.2d 465, 473 (Iowa 2010)).

Jesse's Embers argues that its insurance representative, "a captive agent" of Farm Bureau, failed to explain the key policy terms or explain any (undefined) ambiguities in the policy. Jesse's Embers' owner, Marty Scarpino, submitted an affidavit in resistance to summary judgment attesting that he "purchased coverage for the explicit purpose and expectation of insuring [Jesse's Embers'] loss of profits in the event of the suspension of [its] business operations." Mr. Scarpino further attested that his insurance agent did not explain "that if there was a Governor's proclamation closing us down for any reason, that we would not have coverage." He could "think of dozens of examples of a restaurant losing business and not being able to operate that do not require actual physical damage to the property" and "assumed that the total loss of use of the property or partial loss of the use of the property would consist of a physical loss."

Mr. Scarpino failed to explain what led him to believe he purchased an "all-risks business interruption" policy rather than an "all-risks *commercial property*" policy that included business interruption coverage, but he does not attribute those beliefs to Farm Bureau or its agent. The district court properly granted summary judgment to Farm Bureau on the reasonable expectations claim. *See Boelman*, 826 N.W.2d at 506 ("[T]he Boelmans have presented no evidence of (1) representations made by Grinnell Mutual, which might have fostered expectations, or (2) reliance by the Boelmans on any such

representations. Thus, there is no genuine issue of material fact concerning the application of the doctrine."); *see also Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*, 499 F. Supp. 3d 288, 294 n.9 (S.D. Miss. 2020) ("One does not buy simply 'business interruption insurance.' Policyholders are not insuring against 'all risks' to their income—they are insuring against 'all risks' to their property—that is, the building and its contents.").

## III.

We affirm the district court's order granting summary judgment in Farm Bureau's favor.

**AFFIRMED.**