Patton CLUBINE, Kuhn Farms, Inc., Kuhn Farms Limited, Allen Robert Welte and Frank Welte II, Appellants,

v.

AMERICAN CYANAMID COMPANY and E.I. Du Pont De Nemours & Company, Appellees.

No. 94–452.

Supreme Court of Iowa.

July 19, 1995.

Allen K. Nepper, Denison, for appellant.

Mark A. Woollums and Jean Dickson Feeney of Betty, Neuman & McMahon, Davenport, for appellee American Cyanamid Co.

Joseph E. Halbur, Carroll, and Raymond Michael Ripple, Wilmington, DE, for appellee Du Pont De Nemours & Co.

Considered by HARRIS, P.J., and LARSON, SNELL, ANDREASEN, and TERNUS, JJ.

HARRIS, Justice.

Farmers sued providers of herbicides for damage to their crops. The principal issue is whether, as the trial court ruled, their claims were preempted by federal legislation. We affirm.

Plaintiffs are farmers who sought to eradicate a weed called "shatter cane" from their corn. Defendants are chemical companies whose herbicides were the ones plaintiffs applied to their fields. Defendant American Cyanamid Company manufactures and markets "Prowl." Defendant E.I. Du Pont De Nemours & Company manufactures and markets "Bladex." Both Prowl and Bladex have been approved by the environmental protection agency of the federal government pursuant to the federal insecticide, fungicide, and rodenticide Act (FIFRA), 7 U.S.C. § 136 *et seq.* The trial court explained the approval process this way:

> The Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. § 136 *et seq.*, sets forth a federal comprehensive statutory scheme regulating herbicides. FIFRA establishes an almost monolithic process of review by the EPA, culminating in approval of a label under which a herbicide product may be marketed. [Citation omitted.] Before being sold or distributed in the United States, all herbicides must be registered with the EPA in accordance with FIFRA requirements. 7 U.S.C. § 136a; *see also King v. E.I. Du Pont De Nemours & Co.,* 806 F.Supp. 1030, 1032–33 (D.Me.1992) (explaining the extensive process of EPA approval under FIFRA described herein); *Casper v. E.I. Du Pont De Nemours & Co.,* 806 F.Supp. 903, 907 (E.D.Wash.1992) (citing *Chemical Specialties Mfr. Assoc., Inc. v. Allenby,* 958 F.2d 941, 944 (9th Cir.1992)). The EPA cannot approve a herbicide unless it complies with the requirements set forth in FIFRA, and the EPA labeling regulations implementing the act. 7 U.S.C. § 136a(c)(5); 40 C.F.R. § 152.112 *et seq.* Manufacturers must submit draft language addressing various aspects, including ingredients, directions for use, and adverse effects of the product. 7 U.S.C. § 136a(c); 40 C.F.R. § 152.50 & pt. 156. The EPA regulations

detail how warning labels are to be presented and provide specific requirements for the content, placement, type, size, and promotion of the warranties. 40 C.F.R. § 156.10(h). A final label must be submitted to the EPA prior to registration. 40 C.F.R. § 156.10(a)(6). The regulations also specify necessary directions on how to use each chemical. 40 C.F.R. § 156.10(i).

American Cyanamid, on the herbicide label, recommends application of Prowl/Bladex mix for weed control. Du Pont makes no recommendation on the use of Bladex in combination with any other herbicides.

After suffering damage to their corn, plaintiffs filed this suit against American Cyanamid and Du Pont alleging: (1) their herbicides were defective and unreasonably dangerous; (2) they breached an implied warranty of merchantability; (3) they breached an express warranty; and (4) they negligently failed to test, label and provide adequate instructions and warning regarding the use of their product. Plaintiffs' expert testified that American Cyanamid was made aware that the mix might damage crops under certain weather conditions.

Except for the claim of negligence, to be discussed separately, the district court, after trial, dismissed all claims on the ground FIFRA preempted jurisdiction from all Iowa courts. Because the trial court also found plaintiffs failed to establish the negligence claim, the suit was dismissed.

■■■ I. The preemption doctrine rests on the supremacy clause of the federal constitution:

> This Constitution and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2. If a matter is preempted a state court lacks subject matter jurisdiction to decide it. *Walles v. International Bhd. of Elec. Workers,* 252 N.W.2d 701, 710 (Iowa 1977). Preemption may be found where congress' intent to preempt the field is either expressly stated or implicit in

congressional policy. *Brotherhood of Maintenance of Way Employees v. Chicago & N.W. Transp. Co.,* 514 N.W.2d 90, 93 (Iowa 1994). The trial court based its finding of expressed preemption from the following language of FIFRA:

> **Uniformity.** [States] shall not impose or continue in effect any requirements for labeling or packaging in addition or different from those required under this subchapter.

7 U.S.C. § 136v(b) (1993).

The trial court thought the preemption issue was controlled by *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), a case that involved the claim of inadequate warnings on cigarette advertisements and promotional materials. Plaintiffs in *Cipollone* were also met by preemptive language in legislation, language we find strikingly similar to that faced by the present plaintiffs:

> No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

15 U.S.C. § 1334(b) (1993).

In conformance with *Cipollone* the federal courts have uniformly held that state actions based on the adequacy of warnings or instructions on the labels of EPA-registered pesticides are preempted. *Welchert v. American Cyanamid, Inc.,* 59 F.3d 69, —— (8th Cir.1995); *Taylor AG Indus. v. Pure-Gro,* 54 F.3d 555, 560 (9th Cir.1995); *MacDonald v. Monsanto Co.,* 27 F.3d 1021, 1024 (5th Cir.1994); *Worm v. American Cyanamid Co.,* 5 F.3d 744, 748 (4th Cir.1993); *King v. E.I. Dupont De Nemours & Co.,* 996 F.2d 1346, 1349 (1st Cir.1993), *cert. dismissed,* —— U.S. ——, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993); *Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 370 (7th Cir.1993); *Papas v. Upjohn Co.,* 985 F.2d 516, 519 (11th Cir.1993) (*Papas II*), *cert. denied,* —— U.S. ——, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993); *Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.,* 981 F.2d 1177, 1178–79 (10th Cir.1993) (*Arkansas–Platte II*), *cert. denied,* —— U.S. ——, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993).

FIFRA's definition of pesticides includes herbicides. 7 U.S.C. § 136(u).

The term "labeling" is defined as "all labels and all other written, printed, or graphic matter (A) accompanying the pesticide or device at any time; or (B) to which reference is made on the label or in the literature accompanying the pesticide or device." 7 U.S.C. § 136(p)(2). In determining whether a state claim is preempted under FIFRA, "the issue may … be resolved by looking to, as one factor, whether one could reasonably foresee that the manufacturer, in seeking to avoid liability for the error, would choose to alter the product or the label." *Worm,* 5 F.3d at 747–48.

We conclude the trial court correctly ruled that it could not reach the merits of plaintiffs' claims. Under the statutory definition those claims are label-based, and, because they depend on requirements in addition to—or different from—those imposed under FIFRA, are preempted. Each of the claims (that the herbicides were defective and unreasonably dangerous, that they breached an implied warranty of merchantability, and that they breached an express warranty) is derived from the assertion of factual matters FIFRA expressly places within the exclusive dominion of the EPA. The trial court was correct in so holding.

■ II. The only part of plaintiffs' claims not preempted are those charging defendants with negligence in testing their products. *Worm,* 5 F.3d at 747. On these claims the trial court allowed the parties to present evidence. The court held that:

> Plaintiffs produced no evidence of negligent testing on the part of the defendants. On the contrary, plaintiffs' own expert, Robert Didricksen, testified to a virtual litany of tests, procedures, expenses and time that it takes to get an EPA-approved label under FIFRA for a corn herbicide. Didricksen testified that it takes five to seven *years* to develop and gain EPA approval to market a product, such as Prowl or Bladex, at an estimated expense of $75 to $100 *million* dollars. Given this monolithic litany of tests, time and expense, it is

difficult, indeed, to envision how defendants' EPA-approved herbicides could have been negligently tested.

*Id.*

The record amply supports this finding. Dismissal of all claims must be affirmed.

Like the trial court, we are mindful of the economic loss suffered by the plaintiffs. Like the trial court, we are however obliged to yield to federal law that denies Iowa courts jurisdiction to proceed to the merits.

**AFFIRMED.**