**Raymond SCHUVER and Steven Schuver, Appellants,**

v.

**E.I. DU PONT DE NEMOURS & COMPANY (INC.), Appellee,**

and

**Sanborn Cooperative Grain Company, Defendant.**

No. 94–2081.

Supreme Court of Iowa.

April 17, 1996.

Michael R. Bovee, of Montgomery, Barry & Bovee, Spencer, for appellants.

Donald J. Hemphill of the Hemphill Law Office, Spencer, and Raymond Michael Ripple, Wilmington, Delaware, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, SNELL, and TERNUS, JJ.

LAVORATO, Justice.

Father and son farmers appeal from an adverse summary judgment ruling on all claims against the manufacturer of a herbicide based on successive reductions in corn yields. The farmers contend the reductions in corn yields resulted from the residual carryover effect of applying the herbicide to soybeans planted in rotation with the corn.

The district court concluded that federal law preempted some of the claims and concluded the remaining claims lacked merit. We affirm the ruling because we conclude federal law preempted all of the claims.

## I. *Background Facts.*

O'Brien County farmer Raymond Schuver applied the herbicide Preview to his soybean crop in three successive years: 1988, 1989, and 1990. E.I. Du Pont de Nemours & Co. manufactured Preview. Sanborn Cooperative Grain Company sold the herbicide to Raymond. Raymond did not read Du Pont's application directions before applying Preview. He used Preview under normal growing conditions.

Raymond rotated his cropland yearly between soybeans and corn. In 1989 he began to notice problems with his corn crop. He had planted the corn on land sown to soybeans the previous year.

This problem persisted into the 1990 growing season. At this time Raymond discussed the problem with Sanborn's agronomist. The agronomist told Raymond that Raymond's neighbor had experienced similar damage to his corn crop. The agronomist attributed this damage to the residual carryover effects of applying Preview to soybeans planted on the same ground in the prior year. "Residual carryover effect" means the length of time an application of a pesticide might harm subsequently planted crops.

Raymond retired from farming in 1991. He rented his land to his son Steven on a cash basis. Steven farmed Raymond's land in 1991, 1992, 1993, and 1994. Steven did not use Preview on any of his crops. Nevertheless, Steven suffered damage to his corn crops because of the residual carryover effect from Raymond's use of Preview.

## II. *Background Proceedings.*

The Schuvers filed a four-count petition against Du Pont and Sanborn. Count I alleged the defendants were negligent in the manufacture and sale of Preview to Raymond. Count II alleged a strict liability claim against the defendants because Preview was defective and unreasonably danger-

ous. Count III alleged the defendants impliedly warranted Preview to be merchantable and fit for its intended purpose. Count IV alleged Sanborn expressly warranted to Raymond that Preview was the proper herbicide for the Schuvers to use on their farms.

Following the defendants' separate answers, the district court granted Du Pont's summary judgment motion—over the Schuvers' resistance—on all three counts against it. The case against Sanborn proceeded to a jury trial. The jury awarded damages against Sanborn and in favor of Raymond for crop damages and reduction in the fair market value of his land. The jury awarded crop damages to Steven. Sanborn is not involved in this appeal.

The case is before us on the Schuvers' appeal from the district court's summary judgment ruling against the Schuvers and in favor of Du Pont.

### III. Scope of Review.

Our review of the grant or denial of summary judgment is at law. Iowa R.App.P. 4. Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237. In determining whether a genuine issue of material fact exists, we look at the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *Id.* The moving party carries the burden to show the absence of a material fact issue, and the resisting party is afforded every inference reasonably deducible from the evidence. *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524, 528 (Iowa 1995). We must determine on appeal whether (1) a genuine issue of material fact exists, and (2) the law was correctly applied. *Id.*

### IV. Federal Preemption.

The federal preemption doctrine is based on the Supremacy Clause of the federal constitution:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2. A state court lacks subject matter jurisdiction to hear any matter that is federally preempted. *Clubine v. American Cyanamid Co.*, 534 N.W.2d 385, 386 (Iowa 1995).

The Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) is a comprehensive federal statute regulating pesticide use, sales, and labeling. *Taylor AG Indus. v. Pure-Gro*, 54 F.3d 555, 559 (9th Cir.1995). The FIFRA places enforcement authority in the Environmental Protection Agency (EPA). *Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 601, 111 S.Ct. 2476, 2480, 115 L.Ed.2d 532, 540 (1991).

In addition,

all pesticides sold in the United States must be registered with the Environmental Protection Agency (EPA). 'The objectives and purposes of FIFRA include the strengthening of federal standards, increasing EPA authority for their enforcement, and providing a comprehensive and uniform regulation of the labeling, sale, and use of pesticides.' FIFRA establishes a complex process of EPA review that culminates in the approval of a label under which a product may be marketed. Manufacturers must submit draft label language addressing a number of different topics, including ingredients, directions for use, and adverse effects of the products, and a final label must be submitted to the EPA prior to registration.

*Welchert v. American Cyanamid, Inc.*, 59 F.3d 69, 71 (8th Cir.1995) (citations omitted).

Before the EPA will allow a pesticide to be registered with it, the EPA administrator must determine whether:

(A) its composition is such as to warrant the proposed claims for it;

(B) its labeling and other material required to be submitted comply with the requirements of [FIFRA];

(C) it will perform its intended function without unreasonably adverse effects on the environment; and

(D) when used in accordance with widespread and commonly recognized

practice it will not generally cause unreasonable adverse effects on the environment.

7 U.S.C. § 136a(c)(5)(A)–(D) (1994). Federal law additionally mandates that pesticide labels include (1) warnings and precautionary statements, and (2) directions for use. 40 C.F.R. §§ 156.10(h), (i) (1995).

The FIFRA contains an express preemption clause regarding labeling requirements:

(b) Uniformity

Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

7 U.S.C. § 136v(b). It is undisputed that Preview is a pesticide registered with the EPA.

Following the holdings of a number of federal circuits, we recently held that "state actions based on the adequacy of warnings or instructions on the labels of EPA-registered pesticides are preempted" under the Preemption Clause. *Clubine*, 534 N.W.2d at 387.

In *Clubine*, several farmers sued two herbicide manufacturers for crop damage. They alleged claims for strict liability, implied warranty of merchantability, express warranty, and negligent failure to test, label, and provide adequate instructions and warnings regarding use of their herbicides. With the exception of negligent testing, we held that the FIFRA preempted all of these claims:

We conclude the trial court correctly ruled that it could not reach the merits of plaintiffs' claims. Under the statutory definition those claims are label-based, and, because they depend on requirements in addition to—or different from—those imposed under FIFRA, are preempted. Each of the claims (that the herbicides were defective and unreasonably dangerous, that they breached an implied warranty of merchantability, and that they breached an express warranty) is derived from the assertion of factual matters FIFRA expressly places within the exclusive

dominion of the EPA. The trial court was correct in so holding.

*Id.* at 387.

We also held that the trial court was correct in dismissing the negligent testing claim for failure of proof. The plaintiffs produced no evidence of negligent testing on the part of the defendants. *Id.* at 387–88.

We decided *Clubine* after the parties here had completed their briefing. So the parties did not discuss *Clubine* in their briefs. The parties, however, did discuss *Clubine* in oral arguments. Counsel for the Schuvers conceded that the Schuvers' implied warranty claims are preempted under our holding in *Clubine*. But counsel refused to concede that the Schuvers' negligence and strict liability claims are preempted. Counsel argued that (1) contrary to our holding in *Clubine*, the negligence claims here are not label-based, and (2) as to the strict liability claims, our holding in *Clubine* is dictum. Not surprisingly, counsel for Du Pont argued that our holding in *Clubine* supports preemption of all of the Schuvers' claims.

Given this posture of the case, we limit our preemption discussion to the Schuvers' negligence and strict liability claims.

■ A. *Negligence claims.* Consistent with the brief, the Schuvers' counsel argued the negligence claims against Du Pont are not based solely on the inadequacy of the Preview label. Counsel argued that Du Pont was negligent in four respects:

1. in marketing Preview in O'Brien County, Iowa, when Du Pont knew or should have known that soil types in O'Brien County were susceptible to Preview residual carryover;

2. in failing to withdraw Preview in a timely manner from sale in O'Brien county after learning of the crop damage caused by Preview in that county;

3. in failing to test Preview in O'Brien County soil types before releasing Preview for sale in O'Brien County;

4. in failing to notify in a timely manner O'Brien County farmers of the propensity of Preview to carry over.

These allegations of negligence rest upon an alleged improper or inadequate testing or marketing claim. We think this is merely another way of arguing that Du Pont's labels should have warned against using Preview in O'Brien County. This failure to warn claim is clearly preempted by the FIFRA.

One court reached the same conclusion in analogous circumstances. *See Hue v. Farmboy Spray Co.,* 127 Wash.2d 67, 896 P.2d 682, 692–93 (1995) (en banc). The facts in *Hue* were these. Landowners sued, among others, a pesticide manufacturer. They alleged that a cloud of pesticides—formed from many individual applications on wheat farms—had drifted onto their homes and farms, damaging their crops and plants. The pesticide label contained detailed instructions and warnings as to the maximum amount of pesticides to be used, the need for extreme care to avoid drift, and how to safely use the pesticides under particular conditions and circumstances. *Hue,* 896 P.2d at 684–85.

The *Hue* court first determined that the FIFRA preempted the plaintiffs' product liability claims based on inadequate warnings:

Plaintiffs' claim based upon inadequate warnings or instructions is predicated upon a state duty to provide warnings and instructions that are necessary to make a product reasonably safe. Clearly, this duty constitutes a requirement for labeling or packaging in addition to or different from the information required under FIFRA. *The gist of plaintiffs' case is that pesticides like those at issue here should not be used in an area like the Horse Heaven Hills/Badger Canyon ecosystem, where there is a risk of long distance drift or mass air contamination. Clearly, this sort of caution should go on the label.* The labels for the pesticides at issue in this case contain dozens of detailed warnings and instructions, including warnings for specific states, warnings to use "extreme caution" to avoid drift if desirable plants are "downwind," even under low wind conditions, and specific instructions as to how to avoid drift. Therefore, the plaintiffs' inadequate warnings claim was correctly ruled preempted by the trial court.

*Id.* at 692 (citation omitted) (emphasis added).

Turning its attention to the plaintiffs' negligence claims based upon inadequate testing and marketing, the *Hue* court likewise ruled that the FIFRA preempted this claim:

The trial court also correctly held that plaintiffs' "negligence" claim against [the manufacturer] was preempted. The plaintiffs' negligence theory is not clearly articulated. The "negligence" claim against [the manufacturer] *resting upon alleged improper or inadequate testing or marketing was merely another way of contending that the labels should have warned against use in the Horse Heaven Hills or long distance drift. As the United States Supreme court ruled in Cipollone [v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) ], *the "negligence" claim in this case which was predicated upon the manufacturer's alleged deficiencies in testing and marketing was, in actuality, a "failure to warn" claim, that is preempted.*

*Id.* at 692–93 (citation omitted) (emphasis added).

Here the Preview label provides the following warning:

### PRECAUTIONS

**Do not apply "Preview" Herbicide to soils with a pH greater than 6.8.**
CAUTION: Soil pH varies greatly even within the same field. pH variations as much as 2 pH units are common when the soil has a calcareous sub soil. Determine soil pH by laboratory analysis using a 1:1 soil:water suspension.

It is undisputed that if Preview is used on soils with a pH higher than 6.8, carryover damage can result. The gist of the Schuvers' four allegations of negligence is that Preview should not be used in O'Brien County because the land in this county has a tendency to have a pH greater than 6.8. As *Hue* points out, this sort of caution should go on the label. As mentioned, the label already cautions that Preview should not be applied to soils with a pH greater than 6.8. The claims of negligence against Du Pont are therefore preempted because they require—on Du Pont's label—additional or dif-

ferent information from that required under the FIFRA. *See Taylor*, 54 F.3d at 560 ("FIFRA preempts a common law claim if the legal duty that forms the basis for the claim imposes a state labeling requirement that is different from or in addition to the requirements imposed by FIFRA."); *Clubine*, 534 N.W.2d at 387 (farmers' claims that herbicides were defective and unreasonably dangerous and that manufacturers breached implied warranty of merchantability and express warranty were expressly preempted by FIFRA; farmers' claims were label-based and depended on requirements in addition to or different from those imposed under FIFRA).

The FIFRA does not preempt all negligent testing claims. *Taylor* makes the following distinction:

> The Supreme Court in *Cipollone* held that a negligent testing claim based on a failure to warn theory is preempted because such a claim would "require a showing that [the manufacturers'] advertising or promotions should have included additional, or more clearly stated, warnings...." Claims for negligent testing that are based solely upon the manufacturers' testing or research practices, not related to advertising or promotion, however, are not preempted by FIFRA.
>
> The only evidence that appellants offer in support of their assertion that the manufacturers failed to test adequately the defoliants is the allegedly inadequate product labels themselves. In short, the core of appellants' claim is that the manufacturers failed to mark accurately their labels. Such an allegation requires a showing that the labels should have included additional warnings and is preempted by FIFRA.

*Taylor*, 54 F.3d at 561–62 (citations omitted). As mentioned, the four allegations of negligence here are label-based. They are not based solely upon Du Pont's testing or research practices with regard to whether the product properly functioned.

■ **B.** *Strict liability claim.* In their brief the Schuvers state their strict liability claim this way: "[the] Schuvers' strict liabili-

ty claim against Du Pont ... is premised on [the] Schuvers' assertion that Preview was unreasonably dangerous for use on O'Brien County, Iowa farms, since O'Brien County had a large percentage of farms with high soil pH levels." The petition alleges that "Preview was defective and unreasonably dangerous by reason of its design, testing, inspection, manufacture and failure of warnings."

As with the negligence claims, the strict liability claim is label-based. As with the negligence claims, the gist of the strict liability claim is that Preview should not be used on land in O'Brien County because of the high pH levels there. Again, this is the kind of information that should be on the label.

The challenge is really to the adequacy of the label. Requiring this additional information would be imposing a requirement "in addition to—or different from—those imposed under FIFRA." *Clubine*, 534 N.W.2d at 387. For this reason, the strict liability claim is preempted under the FIFRA.

■ In addition, there is no record evidence that Preview was in a defective condition or unreasonably dangerous as those terms are used for strict liability purposes. A product is in a defective condition "only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." *Fell v. Kewanee Farm Equip. Co.*, 457 N.W.2d 911, 916 (Iowa 1990) (quoting comment *g* to section 402A of the Restatement (Second) of Torts (1976)).

> Strict liability applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer. Many products cannot possibly be made entirely safe for all consumption, and any food or drug necessarily involves some risk of harm, if only from over-consumption. Ordinary sugar is a deadly poison to diabetics.... That is not what is meant by "unreasonably dangerous".... The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

*Id.* at 916–17 (quoting comment *i* to section 402A of the Restatement (Second) of Torts).

The label cautioned that (1) Preview should not be applied to soils with a pH greater then 6.8, (2) soil pH varies greatly even within the same field, and (3) soil pH should be determined by laboratory analysis. Presumably, Preview would be safe to use on soils with a pH less than 6.8. So Preview was not dangerous to an extent beyond that which would be contemplated by the ordinary consumer armed with that knowledge. Using Preview on soil with a pH greater than 6.8 or using Preview without determining pH by laboratory analysis would constitute a misuse of the product. In short, the Schuvers generated no genuine issue of material fact on their claim of strict liability.

## V. *Disposition.*

The district court correctly sustained Du Pont's motion for summary judgment as to all of the Schuvers' claims. The FIFRA preempted those claims. Because the claims are preempted, our courts have no jurisdiction to hear the merits. Additionally, the Schuvers generated no genuine issue of material fact as to their strict liability claim. We therefore affirm.

**AFFIRMED.**