Orville WRIGHT, Appellant,

v.

Cropmate Company d/b/a Dunlap
Fertilizer, Defendant,

and

AMERICAN CYANAMID COMPANY,
Appellee.

No. 97–1322.

Supreme Court of Iowa.

Sept. 9, 1999.

Robert Kohorst of the Kohorst Law Firm, Harlan, for appellant.

Lawrence P. McLellan of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and SNELL, JJ.

McGIVERIN, Chief Justice.

The main question here is whether plaintiff Orville Wright's claims against defendant American Cyanamid Company, concerning the effectiveness of defendant's herbicide on certain weeds in plaintiff's farm fields, are preempted by the federal insecticide, fungicide, and rodenticide act (FIFRA), 7 U.S.C. § 136–136y (1994). The district court concluded that plaintiff's claims were preempted, or not supported by evidence, and therefore entered summary judgment in favor of defendant. Upon our review, we affirm.

## I. Background facts and proceedings.

Plaintiff Orville Wright is a farmer in Harrison County, Iowa. Cropmate Company was doing business through Dunlap Fertilizer, as an agricultural supply and chemical business located in Harrison County. In June 1994, plaintiff Wright hired Dunlap Fertilizer to apply herbicides to his soybean fields. The herbicides applied were Pursuit, Prowl and Select which are manufactured by American Cyanamid.[1] The herbicides as applied were ineffective and plaintiff's soybean fields were overcome by weeds.

Claiming monetary damages as a result of lower yields and increased harvest costs due to the weeds in his fields, plaintiff filed a three-count petition against Dunlap Fertilizer and Cropmate Company. Plaintiff alleged that those defendants were negligent in improperly mixing and preparing the chemicals to be sprayed on plaintiff's soybeans and in improperly applying herbicides to plaintiff's soybeans.

Later, Wright filed an amended and substituted petition naming American Cyanamid as a defendant, alleging products liability, negligence and breach of warranty (express and implied) claims.

After filing an answer, defendant American Cyanamid filed a motion for summary judgment concerning those claims alleged by plaintiff against it. Plaintiff filed a resistance.

After a hearing, the district court sustained American Cyanamid's motion for summary judgment, concluding that plaintiff's claims were preempted under FIFRA or not supported by evidence.[2]

Plaintiff appeals.

## II. Standard of review.

Our review of a grant or denial of summary judgment is for correction of errors at law. Iowa R.App. P. 4; *Krause v. Krause*, 589 N.W.2d 721, 724 (Iowa 1999). Summary judgment is only appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c). To determine whether there is a genuine issue of material fact, the court must examine the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *Id.* The record here consists of the pleadings, affidavits and exhibits. We review the record in the light most favorable to the party opposing summary judgment, *Keystone Elec. Mfg. v. City of Des Moines*, 586 N.W.2d 340, 345 (Iowa 1998), and the moving party carries the burden of showing the absence of a material fact issue. *Schuver v. E.I. Du Pont de Nemours & Co.*, 546 N.W.2d 610, 612 (Iowa 1996). Summary judgment is inappropriate if reasonable minds would differ on how the issue should be resolved. *Keystone*, 586 N.W.2d at 345.

1. Plaintiff's petition asserted claims against American Cyanamid based on the effectiveness of three herbicides, Prowl, Select and Pursuit. At the time of the summary judgment ruling, however, plaintiff's claims focused on the effectiveness of Pursuit only.

2. Defendants Cropmate Company and Dunlap Fertilizer are not involved in this appeal.

## III. General background law regarding preemption under FIFRA.

■ As we noted in *Ackerman v. American Cyanamid Co.*, the federal preemption doctrine is grounded upon the supremacy clause of the federal constitution:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

586 N.W.2d 208, 211 (Iowa 1998) (quoting in part U.S. Const. art. VI, cl. 2). In *Ackerman*, we also explained the relationship between the preemption doctrine and FIFRA:

Preemption may be found where congress' intent to preempt the field is either expressly stated or implicit in congressional policies.

FIFRA is a comprehensive federal statute regulating pesticide use, sales, and labeling. The EPA [Environmental Protection Agency] is the administrative agency in charge of setting appropriate regulations. Before a pesticide may be sold, it must be registered and its labeling approved by the EPA. The review process requires an applicant to submit a proposed label to the EPA for approval. This label must address numerous concerns, including the ingredients, directions for use, and adverse effects of the product. In addition to the written material on the actual container, the term "label" also includes written, printed, or graphic material accompanying the container, to which reference is made.

*Id.* at 211–12 (citations omitted).

FIFRA specifically sets forth the authority the states shall have concerning the labeling of pesticides:

(a) In general

A state may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Uniformity

Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

7 U.S.C. § 136v.

■ The preemption doctrine does not deprive state courts of subject matter jurisdiction over claims involving federal preemption unless Congress has given exclusive jurisdiction to a federal forum. *See Ackerman*, 586 N.W.2d at 214 n. 3. Rather, FIFRA, through the preemption doctrine, only affects the authority and ability of states to impose additional or different labeling or packaging requirements on herbicides and pesticides in addition to those required by the EPA. *See Clubine v. American Cyanamid Co.*, 534 N.W.2d 385, 387 (Iowa 1995). Thus, negligence claims against manufacturers of herbicides and pesticides that challenge the information contained in a product's label are preempted by FIFRA. *Ackerman*, 586 N.W.2d at 212. In other words, 7 U.S.C. § 136v(b) "dictates the preemption of any state common law cause of action that rests on an alleged failure to warn or communicate information about a product through its labeling." *Worm v. American Cyanamid Co.*, 5 F.3d 744, 747 (4th Cir.1993) (*Worm II* ). The difficult task, of course, is deciding whether a claim is a challenge to a product's label.

## IV. Prior Iowa case law regarding preemption under FIFRA.

As was the situation in *Ackerman*, the preemptive effect of 7 U.S.C. § 136v(b) is the issue we must examine in this case. Before considering whether plaintiff Wright's claims against American Cyanamid are preempted by FIFRA, we believe it helpful to first briefly review what we

said in our prior cases concerning the preemption issue.

In *Clubine v. American Cyanamid Co.*, 534 N.W.2d at 386, farmers sued the manufacturers of certain herbicides alleging: (1) defendants' herbicides were defective and unreasonably dangerous; (2) defendants breached an implied warranty of merchantability; (3) defendants breached an express warranty; and (4) defendants negligently failed to test, label and provide adequate instructions and warning regarding use of the herbicides. We concluded that plaintiffs' claims that the herbicides were defective and unreasonably dangerous, and that defendants breached an express warranty or an implied warranty of merchantability, were label-based claims because they depended upon requirements in addition to–or different from–those imposed under FIFRA. *Id.* at 387. We thus concluded that those claims were preempted.

We further concluded that plaintiffs' claims charging defendants with negligence in testing their products were not preempted, but that the district court properly dismissed plaintiffs' negligent testing claim for lack of evidence. *Id.* at 388. In doing so, we did not elaborate on how to determine whether a claim is a challenge to a manufacturer's testing of a product or a disguised label-based claim.

*Schuver v. E.I. Du Pont de Nemours & Co.*, 546 N.W.2d 610, was our next discussion involving the preemption doctrine and FIFRA. In *Schuver*, plaintiff's claims were based on the allegation that defendant's herbicide, Preview, caused crop damage because of residual carryover that adversely affected the next year's crops. Plaintiff alleged that defendant was negligent in (1) marketing the Preview; (2) failing to withdraw the Preview from sale after learning of crop damages caused by it; (3) failing to test Preview in O'Brien County, Iowa, soil types; and (4) failing to notify O'Brien county farmers in a timely manner of the propensity of Preview to carry over. *Id.* at 613.

We characterized plaintiff's negligence claims as really a single claim that the Preview label should have warned against using Preview in O'Brien County because the land in that county has a tendency to have a pH factor greater than 6.8 and that this caution was information that should have been on the label. *Id.* at 614. However, because the Preview label already cautioned that Preview should not be applied to soils with a pH factor greater than 6.8, we concluded that plaintiff's claims were preempted because specific reference on the Preview label to use of Preview in O'Brien County would have been additional or different information from that required under FIFRA. *Id.* at 614–15. Our decision in *Schuver*, therefore, clearly established the rule that any claim concerning an additional warning to the customer/plaintiff regarding use of the product is a challenge to the content of the label and is thus preempted.

We most recently addressed the preemption issue in *Ackerman v. American Cyanamid Co.*, 586 N.W.2d 208. *Ackerman* also involved a claim by a farmer for alleged carryover damage to his crops caused by defendant's herbicide known as Scepter. Plaintiff sought recovery on two theories: breach of implied warranty of merchantability and negligent design and testing. Following an earlier decision by the district court and one by our court of appeals, the district court on remand dismissed plaintiff's breach of implied warranty and negligent-design-and-testing claims, based on its belief that it lacked authority to hear the case because the claims were preempted by FIFRA.

On appeal, we concluded that plaintiff's breach of implied warranty claim was really a challenge to the label and was thus preempted. *Id.* at 213. Our reasoning was that plaintiff's claim was that if the Scepter label had been different concerning the waiting period between the application of Scepter and the planting of corn, the label would have been merchantable.

*Id.* at 213–14. We also concluded that plaintiff's claim for negligence in marketing Scepter was a common-law-duty-to-warn and was therefore preempted by FIFRA. *Id.* at 214.

Additionally, we stated that plaintiff's negligent-design-and-testing claim illustrated that "[t]he line between a claim for mislabeling and a claim for a defective product is razor thin, and can turn on 'whether one could reasonably foresee that the manufacturer, in seeking to avoid liability for the error, would choose to alter the product or the label.'" *Id.* (quoting *Worm II*, 5 F.3d at 747).

We ultimately concluded, however, that Ackerman's negligent-design-and-testing claim was not preempted. In doing so, we distinguished Ackerman's claim from that raised in *Schuver* by noting that Ackerman's claim also alleged a design defect in the production of Scepter, in addition to a negligent testing claim. *Id.* at 215. We noted that plaintiff Ackerman argued that "[t]he defect in Scepter was that it carried over to the following crop year and negatively affected the corn yield," and that "American Cyanamid should have discovered through testing that there was a carryover problem." We further noted that evidence in the record showed that American Cyanamid knew Scepter caused carryover damage, yet "rushed Scepter onto the market so farmers would purchase its product rather than that of their competitors." *Id.* We said:

> In essence Ackerman does not simply allege that adequate testing would have caused American Cyanamid to alter the Scepter label, but directly asserts that adequate testing and proper design would have caused American Cyanamid to alter the product itself.
>
> By recognizing the negligent-design-and-testing claim, we are not requiring information on the Scepter label "different from" or "in addition to" the information FIFRA requires. We are simply recognizing an affirmative duty on manufacturers of potentially dangerous

chemicals to guard against design or manufacturing defects in their chemicals. This does not interfere with FIFRA's purpose of requiring uniform national standards of labeling.

*Id.*

 Our decision in *Ackerman* thus established the rule that a claim based on negligent or inadequate testing will not be considered a disguised label-based challenge if adequate testing would have caused the manufacturer to alter the product itself. Conversely, the rule is that if defendant could remedy any problems with its product, that it learned about through adequate testing, by altering the product's label rather than by changing the product, then any challenge concerning negligent testing is preempted. Thus, analyzing whether a negligent testing claim is preempted by FIFRA will focus on whether plaintiff has shown that the product in question was defective and how defendant could remedy that defect—by changing the label or by changing the product.

## V. Application of preemption principles to plaintiff's claims.

Having reviewed our prior cases concerning the preemption doctrine and the rules established therein, we consider how these rules apply to plaintiff Wright's claims against American Cyanamid in this case.

### A. Defective manufacture and defective application instructions.

 In his petition, plaintiff Wright alleged that American Cyanamid "defectively manufactured and/or rendered defective application instructions for the herbicides." We agree with the district court's finding that plaintiff presented no evidence to support his claim that defendant defectively manufactured Pursuit. Thus, all that remained of plaintiff's claim was that defendant's application instructions were defective and that Pursuit did not work, and thus, control of tall waterhemp should not

have appeared on the label. As the district court properly found, plaintiff's claim was a direct challenge to the information contained on the label and thus was preempted by FIFRA. Accordingly, the district court properly sustained American Cyanamid's motion for summary judgment concerning plaintiff's claims for defective manufacture and defective application instructions.

## B. Negligent testing.

Plaintiff's petition made no reference to negligent or inadequate testing or design. Rather, plaintiff first made assertions concerning inadequate testing in his resistance to defendant's motion for summary judgment. Specifically, plaintiff asserted that American Cyanamid "improperly tested its Pursuit herbicide for its effectiveness against tall waterhemp as well as that [American Cyanamid] falsely claimed in advertisements and sales literature that Pursuit would control tall waterhemp." Plaintiff makes this same argument on appeal.

The district court's ruling on defendant's summary judgment motion did not address plaintiff's assertions concerning improper/inadequate testing and false advertising. However, the court granted defendant's motion for summary judgment and dismissed plaintiff's petition.

As noted above, a negligent testing claim can only survive a preemption challenge if adequate testing would have caused the manufacturer to alter the product. If the manufacturer, upon further testing, would have altered only the label, then any claim based on inadequate testing is preempted by FIFRA.

Our review of the record shows there is no merit to plaintiff's negligent testing claim. We first point out that plaintiff's negligent testing claim is merely based on the fact that American Cyanamid removed reference to tall waterhemp from the Pursuit label after Pursuit was applied to plaintiff's fields in 1994. Plaintiff's counsel asserted during oral argument that the fact that American Cyanamid later removed reference to tall waterhemp from the Pursuit label implies that American Cyanamid failed to properly test Pursuit for its effectiveness on tall waterhemp, and that if proper testing had been done, American Cyanamid would have discovered a potential problem concerning Pursuit's effectiveness on tall waterhemp before it was applied to plaintiff's fields.

■ We do not believe that the fact that American Cyanamid later changed the Pursuit label is sufficient evidence to support plaintiff's negligent testing claim. This is because plaintiff presented no evidence concerning American Cyanamid's testing procedures, that those procedures were inadequate, or that additional testing would have caused American Cyanamid to change the product itself, which, as we discussed above, would be necessary for plaintiff's claim to survive preemption under FIFRA. The fact that American Cyanamid changed the Pursuit label after 1994 suggests that any problems concerning Pursuit's effectiveness on tall waterhemp could in fact be remedied by changing the product's label rather than by changing the product itself. This case is therefore different from our *Ackerman* decision where we noted that plaintiff's claim asserted that adequate testing and proper design would have caused American Cyanamid, in order to prevent carryover damage, to alter the product itself, not merely the label, and thus we concluded that plaintiff's negligent testing claim was not preempted. 586 N.W.2d at 215–16.

■ Furthermore, plaintiff presented no evidence that the Pursuit applied to his fields was somehow defective or ineffective on tall waterhemp so as to give American Cyanamid reason to do further testing. In fact, the deposition testimony of plaintiff's expert, Dr. Robert Ascheman, focused more on the negligent *application* of Pursuit rather than on whether tall water-

hemp was resistant to Pursuit.[3] Specifically, Ascheman testified that the primary cause of plaintiff's claimed damages was "[a] disruption in the spray pattern. It was the application of the spray in an uneven manner, resulting in much less herbicide in the area, . . . and as a consequence, a lesser rate of herbicide getting under the plant and poor weed control, a matter of uneven application, not a matter of materials not working." The following excerpt from Ascheman's deposition testimony explains this point:

> Q. I want to ask you, Doctor, can you state within a reasonable degree of certainty, based on your knowledge and experience in your field of expertise, that resistance to Pursuit was a substantial producing factor of Mr. Wright's weed problems in 1994? A. I'm of the opinion that it was not a-at least not the major factor. To say it had no contribution to it I couldn't be certain, of course. The fact that there was weedy strips and clean strips pretty well negated that argument.

David Simonson, an employee of Cropmate, stated in his deposition that the weed problem was due to the effectiveness of the chemicals themselves rather than the effectiveness of the application. This comment, at best, bears more on the accuracy of statements on the Pursuit label that Pursuit would control tall waterhemp than on whether the Pursuit applied to plaintiff's fields was defective. The record also contains a field trial summary by American Cyanamid concerning the effectiveness of Pursuit on tall waterhemp. The report states that application of Pursuit applied alone in June 1992 to a field in Kansas resulted in poor to no control of tall waterhemp. This isolated incident alone is not sufficient to create a genuine issue of fact that the Pursuit applied to plaintiff's fields was defective or that by performing additional testing, American Cyanamid would have changed the composition of Pursuit, rather than just the label.

We conclude that plaintiff simply failed to present evidence that the Pursuit applied to his fields was defective or that American Cyanamid's testing of Pursuit for control of tall waterhemp was inadequate. In fact, plaintiff's own expert, Dr. Ascheman, testified that "the simplest way to resolve the problem [of Pursuit's performance] was not to make [a] claim for that weed species" on the label. Given this, plaintiff's negligent testing claim is really nothing but a claim that American Cyanamid should have removed reference to tall waterhemp from the label or otherwise warned potential customers that Pursuit was not effective against tall waterhemp. Plaintiff's negligent testing claim is a disguised label-based claim and is therefore preempted by FIFRA. *Cf. Schuver*, 546 N.W.2d at 614–15.

### C. Claims concerning false advertising.

■ In his brief and during oral argument, plaintiff's counsel asserted that defendant falsely advertised that Pursuit would control tall waterhemp. Counsel thus argued that plaintiff's claim really was based on false advertising, rather than a challenge to the information listed on the Pursuit label, and thus is not preempted by FIFRA.

---

**3.** Specifically, Ascheman explained that the herbicide mixture was applied at a higher than recommended pressure resulting in, among other things, drift of the spray particles. Ascheman explained that when this happens:

> [t]he pressure above the recommended pressure is—results in finer, smaller spray particles than might be expected with lower pressure, and as a consequence, those

smaller particles are then more subject to disruption of the spray pattern by the traffic or by the movement of air or the movement of the vehicle through the field, and under these circumstances, this appears to be the principal cause of the lack of weed control or poor efficacy [effectiveness] in the area where the machine was going through the field at 15—14 miles an hour.

We have never specifically examined whether claims based on false advertising are preempted by FIFRA. We did note in *Ackerman,* however, that a plaintiff's claim for negligence in marketing was a common-law-duty-to-warn and was clearly preempted by FIFRA. 586 N.W.2d at 214. Some courts, however, have recognized that a false advertising claim may survive preemption under FIFRA when statements in a manufacturer's advertising "substantially differ" from claims made as part of the statement required in connection with the product's registration with the EPA. *See Lowe v. Sporicidin Int'l,* 47 F.3d 124, 130 (4th Cir.1995) (citing 7 U.S.C. § 136j(a)(1)(B)) (noting that a State is not preempted from imposing common law liability on a defendant if the defendant's advertisements made "claims" "as part of its distribution of sale" that "substantially differ" "from claims made for it as part of the statement required in connection with its [the product's] registration").

We need not decide whether plaintiff's false advertising claim as urged in this case is preempted under FIFRA. This is because plaintiff has no evidence in the record of any Pursuit advertisements that he relied upon in connection with the 1994 application of Pursuit to his fields.[4] Thus, the district court had no opportunity–and neither do we–to compare any alleged false statements in advertising that existed at the time of the 1994 application with information contained on the 1994 Pursuit label. In essence, plaintiff's claim is really a challenge that the Pursuit label incorrectly stated that it would control tall waterhemp. Such a claim is no different from that raised by the plaintiff in *Schuver,* 546 N.W.2d at 614–15, and is therefore preempted by FIFRA.

**D. Claims regarding breach of express and implied warranties.**

■ Plaintiff's breach of express and implied warranty claims are based solely on statements made in the Pursuit label–that Pursuit will control tall waterhemp. This information is specifically required by federal law and approved by the EPA.[5] Plaintiff's breach of express and implied warranty claims are therefore preempted under our Iowa cases, *Ackerman,* 586 N.W.2d at 213–14 (claim for breach of implied warranty of merchantability preempted by FIFRA); *Clubine,* 534 N.W.2d at 387 (claims for breach of implied warranty of merchantability and breach of express warranty are preempted by FIFRA), and under those cases following the general rule that "a 'state law claim for breach of an express warranty is preempted by FIFRA' when the 'express warranty claim ar[i]se[s] solely on the basis of a labeling statement specifically *required* by federal law *and approved* by the EPA.'" *Kawamata Farms v. United Agri Prods.,* 86 Hawaii 214, 948 P.2d 1055, 1077 (Haw.1997) (quoting *Welchert v. American Cyanamid, Inc.,* 59 F.3d 69, 73 (8th Cir. 1995)) (citing general rule but holding that plaintiffs' breach of express warranty claims against agricultural fungicide manufacturer were not preempted: although the product's express warranty was EPA approved, it was not EPA mandated under FIFRA; defendants, rather than State of Hawaii, voluntarily imposed the express warranty upon themselves); *see also National Bank of Commerce v. Dow Chem. Co.,* 165 F.3d 602, 608 (8th Cir.1999) (express and implied warranty claims are preempted); *Lowe,* 47 F.3d at 129 ("an express warranty claim based on EPA-

---

**4.** Besides the 1994 Pursuit label, the only evidence plaintiff has to support his false advertising claim is the fact that American Cyanamid removed tall waterhemp from the Pursuit label after the 1994 application. However, any change from the 1994 Pursuit label is irrelevant because plaintiff relied on the 1994 label–not subsequent ones.

**5.** See 40 C.F.R. § 156.10(h)(2)(iii) (1996) (["t]he directions for use shall include ... [t]he site(s) of application, as for example the crops, animals, areas, or objects to be treated").

approved labeling materials is preempted"); *Gooch v. E.I. Du Pont de Nemours & Co.*, 40 F.Supp.2d 863, 873–74 (W.D.Ky. 1999) (plaintiffs' breach of express and implied warranty claims were preempted; claims that herbicide was not fit for purpose stated in directions for use were based on statements on label, which in turn were related to FIFRA requirements concerning the use and directions for use of the herbicide).

### E. Claims regarding products liability.

■ As with the negligence claim, the gist of plaintiff's strict liability claim really is that the label should have warned that Pursuit was not effective against tall waterhemp. This clearly is a challenge to the adequacy of the label and thus plaintiff's strict liability claim is preempted by FIFRA. *Cf. Schuver,* 546 N.W.2d at 614–15 (strict liability claim was challenge to adequacy of label and thus was preempted under FIFRA). In any event, plaintiff presented no evidence that Pursuit was in a defective condition or unreasonably dangerous as those terms are used in strict liability analysis and thus failed to show there was a genuine issue of material fact concerning this claim. *Cf. id.* (noting that there was no evidence in the record that Preview was in a defective condition or unreasonably dangerous).

### VI. Disposition.

We conclude the district court properly sustained defendant American Cyanamid's motion for summary judgment concerning all claims asserted against it by plaintiff. We affirm the judgment of the district court.

**AFFIRMED.**