# IN THE COURT OF APPEALS OF IOWA

No. 17-0906
Filed July 18, 2018

**RICHARD CHRISTIE,**
        Plaintiff-Appellant,

**vs.**

**CRAWFORD COUNTY MEMORIAL HOSPITAL and BILL BRUCE,**
        Defendants-Appellees.
_____

Appeal from the Iowa District Court for Crawford County, Edward A. Jacobson, Judge.

Richard Christie appeals from summary judgment entered in favor of defendants, dismissing his causes of action for discrimination and wrongful discharge against his employer. **REVERSED AND REMANDED.**

Michael J. Carroll of Coppola, McConville, Coppola, Carroll, Hockenberg & Scalise, P.C., West Des Moines, and Angela L. Campbell of Dickey and Campbell Law Firm, P.L.C., Des Moines, for appellant.

Randall D. Armentrout and Leslie C. Behaunek of Nyemaster Goode, P.C., Des Moines, for appellees.

Heard by Vogel, P.J., and Potterfield and McDonald, JJ.

**VOGEL, Presiding Judge.**

Richard Christie appeals from summary judgment entered in favor of defendants, Crawford County Memorial Hospital (CCMH) and Bill Bruce, dismissing his causes of action for violations of the Iowa Civil Rights Act and wrongful discharge against his employer. Because Christie has generated an issue of material fact on both claims, we reverse the district court's grant of summary judgment and remand for further proceedings.

## I. Background Facts and Proceedings

Christie began working at CCMH in November 2007 as an EMT-Paramedic, responsible for driving emergency vehicles and assisting patients. He is homosexual. On January 27, 2014, CCMH terminated Christie after he called a supervisor a "fat fuck." He admitted he had called her that "a few times." Christie filed a grievance with the union after speaking with his supervisor, Bruce Musgrave. CCMH rehired Christie about a month later after he signed a zero-tolerance agreement containing various conditions such as making a written apology to various staff members. The agreement states, "Any defamation of character or profanity that is used to refer to any employee, patient or visitor within the Hospital or county EMS system is grounds for immediate termination without right to a [g]rievance for the next [twelve] months."

In December 2014, Christie filed a complaint with the Iowa Civil Rights Commission (ICRC) alleging his termination was based on his sexual orientation and he was paid less than other, straight males working for CCMH. Christie based his complaint on information he received from both his supervisor and the human resources director who told him Bill Bruce, chief executive officer of CCMH, made

derogatory comments about Christie's sexual orientation. In January 2015, Christie learned CCMH hired a paramedic who did not have the proper licensure. He reported CCMH to the Iowa Department of Public Health (IDPH).

In May 2015, Christie learned he was the subject of an investigation after a patient complained he made derogatory comments about her. Christie and another paramedic had responded to a call and helped a woman onto a gurney and then into the ambulance. The woman and the woman's mother reported Christie made comments about her weight and referred to injuring his back while carrying the woman down the stairs.[1] Christie admitted he called the emergency room and mentioned the woman was "heavy" and he said "Ow, my back" as he helped lower the patient down a flight of steps. Musgrave asked Diane Arkfeld, the director of patient and family services, to investigate the complaint. Arkfeld met with the patient and the patient's mother, and she passed her findings on to Musgrave. Musgrave also conducted his own investigation, speaking with police officers who assisted on scene as well as with Heather Rasmussen, the director of quality improvement, who interviewed the other paramedic on scene. After the investigation, Musgrave recommended Christie's termination from CCMH. On May 28, 2015, Christie was terminated for making "derogatory remarks" to a patient, contrary to prior instructions, thereby showing "continued lack of respect of others" and "insubordination."

---

[1] Bruce Musgrave's patient complaint summary attributed the following comments to Christie: referring to the patient as "fat," exclaiming "there goes my back" and "gosh she is so fat" as he helped the patient down stairs and into the ambulance, and about Bruce Musgrave, "Do you think Bruce will show up?"; "He's probably at home hanging with the kids, he probably won't show up"; and "If I was in charge I would fire half of the staff."

In May 2016, Christie filed a petition alleging CCMH had subjected him to discrimination based on his sexual orientation, retaliated against him after he filed a complaint with the ICRC, and violated public policy when it terminated him after he reported CCMH to the IDPH.  CCMH denied the allegations.  Discovery ensued.  Following a motion for summary judgment filed by CCMH in April 2017, the district court granted summary judgment in favor of CCMH on each of Christie's claims.[2]  Christie appeals.

## II.  Standard of Review

"We review a decision by the district court to grant summary judgment for correction of errors at law."  *Goodpaster v. Schwan's Home Serv., Inc.*, 849 N.W.2d 1, 6 (Iowa 2014) (citing Iowa R. App. P. 6.907).  "Summary judgment is proper when the movant establishes there is no genuine issue of material fact and it is entitled to judgment as a matter of law."  *Id.* (citing Iowa R. Civ. P. 1.981(3)).  "The burden is on the moving party to demonstrate that it is entitled to judgment as a matter of law."  *Id.* (quoting *Sallee v. Stewart*, 827 N.W.2d 128, 133 (Iowa 2013)).  As we determine whether the moving party has met this burden, we view the record in the light most favorable to the nonmoving party.  *Id.* (citing *Wright v. Am. Cyanamid Co.*, 599 N.W.2d 668, 670 (Iowa 1999)).

## III.  Merits

Christie asserts CCMH violated the ICRA by discriminating against him with respect to his sexual orientation in terminating his employment and by retaliating against him for his involvement in filing a complaint with the ICRC.  He also asserts

---

[2] In Christie's resistance to CCMH's motion for summary judgment, Christie abandoned his claims of wage discrimination and hostile work environment.

CCMH violated public policy when it terminated him after he complained to the IDPH. He claims the district court erred in granting CCMH's motion for summary judgment asserting there are genuine issues of material fact in dispute.

### A. Sexual Orientation Claim

The district court considered Christie's sexual orientation claim under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).[3] The ICRA prohibits discharging or otherwise discriminating against an employee based on the employee's sexual orientation. Iowa Code § 216.6(1)(a) (2015). "The basic elements of a prima facie case of discrimination in employment are: (1) plaintiff is a member of a protected class; (2) plaintiff was performing the work satisfactorily; and (3) plaintiff suffered an adverse employment action." *Farmland Foods, Inc. v. Dubuque Hum. Rts. Comm'n*, 672 N.W.2d 733, 741 n.1 (Iowa 2003). Once a prima facie case is established, the employer must raise a genuine issue of fact as to "a legitimate, nondiscriminatory reason for the termination." *DeBoom v. Raining Rose, Inc.*, 772 N.W.2d 1, 6 (Iowa 2009) (internal citation omitted). "If the employer offers a legitimate nondiscriminatory reason, the plaintiff must show the employer's reason was pretextual and that unlawful discrimination was the real reason for the termination." *Id.* at 6–7 (internal citation omitted).

---

[3] The Iowa Civil Rights Act (ICRA) was modelled after Title VII of the federal Civil Rights Act of 1964, which "was designed to ensure equal opportunity in employment for all, regardless of sex." *Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 677 (Iowa 2004) (citing *Pecenka v. Fareway Stores, Inc.*, 672 N.W.2d 800, 803 (Iowa 2003)). Therefore, Iowa courts have consistently employed federal analysis when interpreting the ICRA; however, these decisions are not binding when interpreting similar provisions under the ICRA. *Id.*

The parties do not dispute that Christie established a prima facie case of discrimination and that CCMH offered a legitimate, nondiscriminatory reason for his termination. Christie's sole disagreement is whether the district court correctly analyzed the evidence so as to establish a pretext for his firing. The district court determined there was

> no evidence that Mr. Bruce himself or his previous comments about the Plaintiff being a homosexual had any type of influence on Mr. Musgrave in his investigation or in his recommendation. Mr. Bruce simply approved the termination based on the conclusion of the investigation which showed a violation of the agreement to refrain from derogatory comments of any sort.

The court characterized Bruce's derogatory sexual-orientation comments as "stray remarks" that were insufficient to establish a discriminatory motive. While that may be true, at summary judgment the district court must view the facts in the light most favorable to Christie, and it did not do so. Christie stated in his deposition that Bruce made his statements to Musgrave and Christie's union representative, calling Christie a "fag" and stating he "does not like [Christie's] kind." The evidence shows that, although Musgrave performed the investigation into Christie's comments to the patient, the firing decision was ultimately made by Bruce. Bruce's statements are direct evidence of a possible discriminatory motive by the decisionmaker in violation of the ICRA. *See* Iowa Code § 216.6(1)(a). On this record, summary judgment was not warranted, and we reverse.

### B. Retaliation Claim–ICRA

Christie next asserts the district court ignored or misconstrued evidence of pretext supporting his retaliation claim. Iowa law also prohibits retaliating against an employee because the employee lawfully filed a complaint under the ICRA. *Id.*

§ 216.11(2). Christie must therefore prove "(1) the plaintiff engaged in protected activity; (2) the employer took adverse employment action against the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Estate of Harris*, 679 N.W.2d at 678 (internal citations omitted). CCMH must then offer a legitimate, non-retaliatory reason for the adverse employment action. *Id.* If CCMH provides such a reason, Christie must then show the reason is merely pretextual. *Id.*

As with the previous discussion, Christie takes no issue with CCMH providing a legitimate, non-retaliatory reason for the termination, but he asserts his termination was pretextual. CCMH asserts it terminated Christie in May 2015 because he made derogatory remarks about a patient, but Christie claims the real reason is retaliation following his December 2014 complaint to the ICRC. "The causation standard in retaliatory discharge cases has been characterized as "'a high one.'" *Haskenhoff v. Homeland Energy Sols., L.L.C.*, 897 N.W.2d 553, 582 (Iowa 2017) (quoting *Hulme v. Barrett*, 480 N.W.2d 40, 42 (Iowa 1992)). The causal connection "must be a 'significant factor' motivating the adverse employment decision." *Id.* (quoting *Hulme*, 480 N.W.2d at 42)). A factor is significant if the reason "'tips the scales decisively one way or the other,' even if it is not the predominate reason behind the employer's decision." *Id.* (quoting *Teachout v. Forest City Cmty. Sch. Dist.*, 584 N.W.2d 296, 302 (Iowa 1998)).

The district court considered the element of causal connection based on Christie's claim of protected activity in filing an ICRC complaint in December 2014. The district court held:

Here, the Plaintiff filed a complaint with [the ICRC] in December 2014. Evidence presented indicates that the decision to terminate the Plaintiff occurred on May 19, 2015 and the termination occurred on May 28, 2015. Plaintiff has provided no evidence that anything occurred between the time of the complaint and the time of his termination relating his termination to the complaint to the ICRC. There is nothing in the evidence which indicates that the ICRC complaints were a factor in the decision to terminate his employment. The mere fact that the Plaintiff made the complaint to the ICRC and he was subsequently terminated is insufficient to provide a causal connection without something more. Here, there is insufficient evidence provided which indicates that something more. The triggering factor in the termination is simply the commission of an act by the Plaintiff that violated his strict agreement not to defame any patient, employee, or visitor.

Viewing the facts in the light most favorable to Christie once again, we disagree. Regardless of whether his derogatory comments were a triggering factor in his termination, a genuine issue of material fact remains as to whether his filing of an ICRA complaint was a "significant factor" in his termination. *See id.* As noted above, the basis for Christie's ICRC complaint was sexual-orientation discrimination by Bruce. That Bruce was the source of derogatory comments supporting the complaint and also the decisionmaker when it came time to fire Christie—six months after Christie's ICRC complaint—certainly could have "tip[ped] the scales." *See id.* Because there was a genuine issue of material fact in the record, summary judgment was not appropriate.

## C. Public Policy/Wrongful Discharge Claim

Next, Christie claims the district court committed error in granting summary judgment on his public policy claim because there was direct evidence from the union representative that Bruce wanted to fire Christie for complaining outside the "chain of command" about a new hire who did not have the proper licensure. To succeed on a claim of wrongful discharge in violation of public policy, Christie must

prove "(1) engagement in a protected activity, (2) adverse employment action, and (3) a causal connection between the two." *Rivera v. Woodward Res. Ctr.*, 865 N.W.2d 887, 894 (Iowa 2015) (quoting *Teachout*, 584 N.W.2d at 299). Here, CCMH does not contest the first two elements. Instead, CCMH asserts Christie cannot establish a causal connection between his IDPH report in January 2015 and his termination in May 2015 and they have an overriding business justification for his termination. "The causation standard is high, and requires us to determine if a reasonable fact finder would conclude" Christie's IDPH report was the determining factor in CCMH's decision to fire him. *See Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 281 (Iowa 2000); *see also Rivera*, 865 N.W.2d at 898 (defining "determining factor" as "one that tips the balance in an employment decision").

Christie claims his termination was causally connected to his complaint to the IDPH. As support, he asserts that after he complained to the IDPH, Bruce called the union representative and stated he wanted to terminate Christie and another employee for going outside the chain of command and filing a complaint directly with the IDPH. CCMH asserts the complaint and termination are not causally connected because Christie's termination occurred approximately four months after the complaint; the alleged statements were made by Bruce, who was not at all involved in the patient-complaint investigation; and CCMH had an overriding business justification to terminate Christie, namely, that his derogatory comments about a patient were in direct violation of his zero-tolerance agreement with CCMH.

In granting CCMH's motion for summary judgment, the district court held:

The Plaintiff has not provided anything beyond this declaration and even viewing the evidence in the light most favorable to the Plaintiff, there is simply insufficient evidence of any type of link between the complaint to the IDPH and Christie's termination. There is nothing in the evidence provided which shows that any action was taken against the Plaintiff by Mr. Bruce or any other individual in January 2015. There is nothing in the record which indicates that any action was taken against the Plaintiff until the investigation into the derogatory patient comments occurred in May 2015. Plaintiff has provided no evidence that the IDPH complaint played any role in the decision-making process by Mr. Musgrave nor has the Plaintiff provided any evidence that Mr. Bruce was part of the process in reaching the decision to terminate. It was Mr. Musgrave, not Mr. Bruce, who investigated the derogatory patient comments and made the recommendation to terminate. Mr. Bruce simply approved the termination based on the conclusion of the investigation which showed a violation of the agreement to refrain from derogatory comments of any sort. The Plaintiff has provided no evidence that the IDPH or Mr. Bruce's previous comments about wanting to terminate Mr. Christie for the complaints had any influence on Mr. Musgrave in his investigation or in his recommendation. There is simply nothing to indicate that the IDPH complaint was a factor in the termination recommendation. . . .

As we must view the record in the light most favorable to Christie, we disagree with the district court. In his deposition, Christie stated his union representative had a discussion with Bruce following Bruce's discovery of the IDPH complaint. The union representative told Christie that Bruce was so upset that he wanted to fire Christie and two other employees involved in submitting the complaint. Although Bruce was dissuaded from firing the three employees at that time, Christie noted his relationship with Musgrave became more distant following the complaint. Both Musgrave and Bruce were integral in the subsequent investigation into Christie's patient comments and the decision to terminate him.

Although the "causation standard is high," it generally "presents a question of fact." *Fitzgerald*, 613 N.W.2d at 289. Thus, if there is a dispute, as here, "over the conduct or the reasonable inferences to be drawn from the conduct, the jury

must resolve the dispute." *Id.* Based on the above-mentioned facts in the record, we conclude a reasonable jury could find that Christie's conduct in filing a complaint with the IDPH was the reason that "tip[ped] the scales decisively" towards terminating his employment. *Haskenhoff*, 897 N.W.2d at 582.

## IV. Conclusion

Because Christie generated an issue of material fact on his sexual orientation claim, retaliation claim, and public policy claim, we reverse the district court's grant of summary judgment and remand for further proceedings.

**REVERSED AND REMANDED.**